[No. 58935-1-I.   Division One.   March 3, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. MATTHEW PRESTON
MITCHELL, *Appellant*.

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Seth A. Fine* and *Lisa D. Paul, Deputies*, for respondent.

¶1 PER CURIAM — Matthew Mitchell appeals his conviction for possession of a controlled substance (cocaine), arguing the trial court abused its discretion by denying his motion to suppress the incriminating evidence. Mitchell claims that police officers improperly seized him without individualized reasonable suspicion of any criminal wrongdoing. In the alternative, Mitchell claims that his seizure amounted to a pretextual stop in violation of *State v. Ladson.*[1] Finding no merit to either claim, we affirm Mitchell's conviction.

¶2 Late one night, a 911 caller reported that a man was being robbed and assaulted in a grocery store parking lot. Within a matter of minutes, several law enforcement vehicles arrived at the scene. Other patrol cars pursued and stopped the pickup truck the alleged suspects used to flee from the scene.

¶3 At the scene of the reported incident, the apparent victim, Matthew Preston Mitchell, was being treated for his injuries. Mitchell told the police that he had been assaulted by two people while he was in the parking lot, but later changed his story, stating that the suspects had at one point been inside his car. When a deputy asked permission from Mitchell to process the vehicle for evidence of the robbery, Mitchell denied the request. Mitchell then stated that he was no longer interested in participating in the investigation, and that he wanted to leave the scene. The deputy asked Mitchell to remain at the scene because he was the victim of a violent crime that was being investigated. When Mitchell told him that he was afraid he might be harmed if he cooperated with police, the deputy tried to calm his fears. After talking with the deputy, Mitchell agreed to try to identify his attackers in a showup. Meanwhile, the deputy

---

[1] 138 Wn.2d 343, 979 P.2d 833 (1999).

saw what appeared to be marijuana in Mitchell's car, which led to a K-9 drug dog being ordered to the scene. When the dog arrived, it signaled that there were drugs in Mitchell's vehicle.

¶4 Mitchell was taken to where the suspects were detained and identified his assailants. He then provided a written statement before he was returned to the grocery store parking lot and allowed to leave. Mitchell's vehicle, however, was impounded. A search warrant was obtained, and cocaine and drug paraphernalia were found in the car. Mitchell was charged with unlawful possession of cocaine.

¶5 Before trial, Mitchell moved to suppress the cocaine, arguing that he was illegally seized during his encounter with the police After considering the testimony and other evidence presented, the court denied the motion to suppress, concluding that Mitchell had not been seized in violation of his constitutional rights. The court entered the following findings of fact and conclusions of law:

## I. FIND[INGS] OF FACT

1. On September 9th, 2005 at 11:15 P.M. there was a robbery with a reported gun at 148th St. and Hwy. 99 in Snohomish County, WA.

2. Several Snohomish County Sheriff's Deputies and Washington State Patrol Troopers responded to the scene.

3. Matthew Mitchell, the Defendant, was found at the scene and was being treated by aid personnel. The Defendant had made statements, and had injuries consistent with being a victim of a robbery.

4. The Defendant was being treated as a victim, not a suspect[,] at this point.

5. The Defendant related to law enforcement that he had been inside his car with one of his assailants, and that the assailant had threatened him with a gun. The Defendant thought he was joking and left the car. The assailant followed him out of the car, struck him several times in the head with what appeared to be a gun and stole money from the Defendant.

6. Throughout his contact with the police, the Defendant['s] recitation of the events changed and certain details were added or omitted.

7. At this time, police units were coordinating with each other, searching for the assailants and investigating the crime scene.

8. Sheriff's Office personnel requested to look in the Defendant's car for fingerprints or other evidence that would link the assailants to the Defendant. The Defendant denied consent to look in the vehicle.

9. The Defendant announced that he was not interested in participating with the investigation and wanted to leave the scene. [The deputy] indicated that the Defendant needed to stay because he was the victim of a violent crime that was being investigated.

10. A narcotics K-9 was ordered.

11. At some time sheriff deputies spotted pieces of green vegetable matter through the window of the Defendant's car. The green vegetable matter appeared to be marijuana.

12. At some time during police contact with the Defendant's girlfriend, who was present during the robbery, she related that she and the Defendant were at the location to buy marijuana.

13. The K-9 arrived on the scene and indicated that there were drugs in the Defendant's vehicle.

14. A search warrant was applied for and cocaine and drug paraphernalia [were] found in the Defendant's car.

## II. CONCLUSIONS OF LAW

1. Police personnel were initially investigating this incident on two levels, with the Defendant being both a victim and a suspect. This investigation was proper.

2. Police personnel received an evolving statement about the events from the Defendant.

3. This evolving statement gave a reason for the police to investigate the information.

4. The Defendant was detained during this investigation, but the detention was not improper or impermissibly lengthy.

5. Based upon the information known to the police officers at the time, there were no violations of *Terry*.[2] The officers were investigating a serious, violent offense.

6. The Defendant's level of cooperation was inconsistent with what had occurred. Police personnel have an obligation to investigate. The scope of the investigation was not unduly intrusive.

7. Statements made by the Defendant to law enforcement in response to the narcotics K-9 being ordered shall be suppressed, but may be explored on rebuttal [as the court finds they are voluntary]. All other statements shall be admissible in the State's case in chief, subject to the rules of evidence.

¶6 Following a bench trial based on stipulated evidence, Mitchell was found guilty as charged.

¶7 On appeal, Mitchell argues that he was detained in violation of his rights under the federal and state constitutions. Mitchell argues his conviction must be reversed because the cocaine seized from his vehicle should have been suppressed. We disagree.

¶8 The Fourth Amendment to the United States Constitution[3] and article I, section 7 of the Washington Constitution[4] protect individuals from unreasonable seizures and searches by the government.[5] If the detention is unreasonable, the fruits of the unreasonable seizure are subject to exclusion under the "fruit of the poisonous tree"

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3] The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV.

[4] Article I, section 7 of the Washington Constitution provides similar privacy protections, with a broader reach than the Fourth Amendment, as it " 'clearly recognizes an individual's right to privacy with no express limitations' " and places greater emphasis on privacy. *Ladson*, 138 Wn.2d at 348 (internal quotation marks omitted) (quoting *State v. Young*, 123 Wn.2d 173, 180, 867 P.2d 593 (1994)).

[5] *State v. Gocken*, 71 Wn. App. 267, 274, 857 P.2d 1074 (1993).

doctrine.[6] The constitutional protection is implicated, how-ever, "only when an encounter between a police officer and a citizen rises to the level of a seizure."[7]

¶9 We agree with Mitchell that the police officers who first arrived on the scene did not have a reasonable suspicion that he was involved in any criminal wrongdoing. But a brief detention of a potential witness to a crime is permitted, so long as it meets the Fourth Amendment's reasonableness requirement. As the United States Su-preme Court explained,

> [T]he law ordinarily permits police to seek the voluntary cooperation of members of the public in the investigation of a crime. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida* v. *Royer*, 460 U.S. 491, 497[, 103 S. Ct. 1319, 75 L. Ed. 2d 229] (1983). See also ALI, Model Code of Pre-Arraignment Procedure § 110.1(1) (1975) ("[L]aw enforcement officer may . . . request any person to furnish information or otherwise cooperate in the investigation or prevention of crime"). That, in part, is because voluntary requests play a vital role in police investigatory work. See *e.g.*, *Haynes* v. *Washington*, 373 U.S. 503, 515[, 83 S. Ct. 1336, 10 L. Ed. 2d 513] (1963) ("[I]nterrogation of witnesses . . . is undoubt-edly an essential tool in effective law enforcement"); U. S. Dept. of Justice, Eyewitness Evidence: A Guide for Law Enforcement 14-15 (Oct. 1999) (instructing law enforcement to gather infor-mation from witnesses near the scene).[8]

¶10 In judging reasonableness, courts apply a balancing test that looks to "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the

---

[6] *State v. Takesgun*, 89 Wn. App. 608, 611, 949 P.2d 845 (1998).

[7] *State v. Thorn*, 129 Wn.2d 347, 350, 917 P.2d 108 (1996).

[8] *Illinois v. Lidster*, 540 U.S. 419, 425, 124 S. Ct. 885, 157 L. Ed. 2d 843 (2004) (some alterations in original).

public interest, and the severity of the interference with individual liberty."[9]

¶11 The police officers waited while Mitchell was receiving emergency medical care and treatment for his injuries before interviewing him. They then detained him only long enough to interview him, transport him to attend a showup identification and provide a written statement, and return him to the scene of the assault. These types of arrangements are ordinarily reasonable and constitutionally permissible.

> It is very difficult to investigate or prosecute a crime without witnesses. Missing witnesses have been the bane of more than one prosecution. Identifying the witnesses and obtaining their stories is thus an essential part of police work, and is best done as quickly as possible. A *Terry* stop of a . . . witness is therefore the essence of good police work.[10]

¶12 Other relevant factors to be considered include the seriousness of the crime being investigated, a reason to believe the person detained had knowledge of material to aid in the investigation of such crime, and the need for prompt action.[11]

¶13 Mitchell contends that he was seized when the deputy told him he had to remain at the scene of the robbery. Under the circumstances, this remark by the deputy did not transform an otherwise consensual police interaction into a constitutionally impermissible detention. By that time, Mitchell was viewed both as a victim and a suspect in the criminal investigation. Mitchell acknowledges that the deputy had observed a green, leafy substance resembling marijuana in his car, and that Mitchell's girl friend admitted to police that they had arranged to pur-

---

[9] *Brown v. Texas*, 443 U.S. 47, 51, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979).

[10] *State v. Watkins*, 207 Ariz. 562, 88 P.3d 1174, 1177 n.4 (Ct. App. 2004) (alteration in original) (quoting Charles L. Hobson, *Flight and* Terry: *Providing the Necessary Bright Line*, 3 MD. J. CONTEMP. LEGAL ISSUES 119, 139 (1992)).

[11] 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.2(b) at 289-91 (4th ed. 2004).

chase marijuana from one of the robbery suspects. Given these facts and Mitchell's own inconsistent statements about what happened, the police had a reasonably articulable suspicion of specific criminal activity. An investigatory stop was warranted under *Terry*.

¶14 Alternatively, Mitchell argues he was illegally detained under *Ladson*. He argues that the deputy unlawfully used Mitchell's status as a victim of the robbery "as a pretext or justification to detain Mr. Mitchell for purposes of investigating [the deputy's] suspicions of a drug offense by [Mitchell]." *Ladson*, however, is readily distinguishable. In that case, two police officers followed a vehicle they believed was being driven by a person involved in drug dealing, hoping to find a reason to stop him. After following the car for some time, the police discovered the vehicle had expired license plate tabs. During the ensuing stop, the police learned that the driver had an expired license. They arrested the driver and searched the vehicle incident to arrest, discovering a gun in the car and drugs on the driver. The officers admitted that they used traffic infractions as an excuse to stop cars in order to investigate unrelated criminal activity. The *Ladson* court suppressed the evidence, finding it was obtained pursuant to a pretext stop. But in this case, the police were merely attempting to ascertain the motive for the robbery then under investigation. No pretext was involved. The incriminating evidence was discovered in the course of a lawful police investigation. Mitchell's motion to suppress was properly denied.

¶15 Affirmed.

Review denied at 165 Wn.2d 1022 (2009).