OPINION
{¶ 1} Defendant-appellant Craig Topps appeals from his conviction and sentence, following a no-contest plea, for possession of crack cocaine and possession of cocaine, other than crack cocaine, in violation of R.C. § 2925.11(A). Topps contends that the trial court erred when it overruled his motion to suppress, finding that the police *Page 2 
acted lawfully in detaining and subsequently patting him down for weapons. We conclude that Topps was lawfully detained and patted down. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} One early morning in October, 2006, deputies of the Montgomery County Sheriffs Office received reports of a possible domestic violence and of a person who was struck by a vehicle, in the area of the Dixie Lounge in Harrison Township. The first responding deputies did not observe anything related to the report. Sergeant Saylor, nearby in his patrol car, nonetheless instructed investigating deputies to conduct a thorough search of the area to locate any person who may have been injured by a vehicle. Saylor also helped to search the area.
 {¶ 3} Soon after, a white female approached Saylor's patrol car and reported that there was a white male in a parking lot near the Dixie Lounge who was screaming for help. Saylor and other deputies reported to the scene. There they observed a white male and a black male standing shoulder to shoulder next to a payphone. Saylor described what he observed of the white male:
 {¶ 4} "Well, I responded to that area . . . and observed a white male in the parking lot screaming very — in a manner that was very — what's a good adjective, let's see, something — in a manner that was very alarming to me to see a man screaming like there was something very very wrong going on." Transcript of Motion to Suppress Hearing, 28.
 {¶ 5} As police approached, the black male (defendant-appellant Topps), began to walk away from the scene. Officers approached him and ordered him to stop. He *Page 3 
continued to walk away. Two deputies then grabbed hold of Topps's shirt and physically moved him back towards the patrol car. Topps was non-compliant and began to scream profanities at the officers. A pat-down outside the patrol car revealed contraband.
 {¶ 6} At the motion to suppress hearing, Saylor admitted on cross examination that he had no specific articulable suspicion that Topps may have been involved in a crime. Tr. 34. In response to a question regarding his concerns when Topps began to walk away from the scene, Sheriffs Deputy Walters testified:
 {¶ 7} "Not knowing what was going on, whether he was the suspect in it, whether he was a witness, didn't really know. Like I said, we didn't know what we had. We were only going off the very small information that was provided to us by dispatch."
 {¶ 8} Topps moved to suppress the contraband evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, Topps's motion to suppress was overruled. Topps then pled no contest, he was found guilty as charged, and he was sentenced accordingly. From his conviction and sentence, Topps appeals.
 II {¶ 9} Topps's sole assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CONCLUDED THAT THE POLICE ACTED ON AN ARTICULABLE SUSPICION WHEN THEY DETAINED AND SUBSEQUENTLY SEARCHED DEFENDANT APPELLANT."
 {¶ 11} In support of this assignment of error, Topps argues that the police lacked a lawful basis to stop him. He makes no independent argument that there was no basis for a weapons pat-down, for officer safety, once he had been stopped. *Page 4 
 {¶ 12} In the trial court's decision overruling Topps's motion to suppress, the trial court held that the stop and search was reasonable, applying a totality of the circumstances test, and concluding as follows:
 {¶ 13} "Due to the totality of the circumstance, Defendant's reluctance to cooperate, the uncertainty of the situation the officers were responding to, and the potentially violent and dangerous crime which they were originally dispatched, the officers acted reasonably in conducting the pat down search of Defendant." Decision, Order and Entry Overruling Defendant's Motion to Suppress, 4.
 {¶ 14} As an initial matter, with regard to Sergeant Saylor's explicit admission that he did not have a "specific articulable suspicion" that Topps was involved in a crime, this statement, while a part of our analysis, is not dispositive on the issue of whether the stop was reasonable. "[T]he question whether a Fourth Amendment violation occurred in this case depends upon an objective assessment of the officer's actions at the time of the [stop], and not upon the officer's actual (subjective) state of mind." Dayton v. Erickson (1996),76 Ohio St.3d 3, 6, 665 N.E.2d 1091.
 {¶ 15} Furthermore, we conclude that under limited circumstances, a police officer may briefly detain a potential witness to a criminal act for investigative purposes, even though the officer has no reasonable basis for concluding that the potential witness is, or may have been, involved in the criminal activity that the police officer is investigating, consistently with Fourth Amendment protections. In the case before us, even if the officers who stopped Topps lacked reasonable, articulable suspicion that Topps was involved in criminal activity, a determination that we need not, and do not, make, we conclude that the officers had a reasonable basis for stopping Topps briefly, *Page 5 
as a potential witness to criminal activity.
 {¶ 16} Both the Ohio and United States constitutions, using virtually identical language, protect the citizenry against unreasonable search and seizure by police. Section 14, Article I, Ohio Constitution; andFourth Amendment to the United States Constitution. In State v.Robinette (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762, the Supreme Court of Ohio interpreted both provisions as affording the same protections. Accordingly, we review the facts of this case to determine whether a violation of the Fourth Amendment of the United States constitution occurred.
 {¶ 17} The Fourth Amendment requires that all warrantless stops or "seizures" of citizens be reasonable. U.S. v. Brigonni-Ponce (1975),422 U.S. 873, 878, 95 S.Ct. 2574. "[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." Id. (Citing Terry v. Ohio (1968), 392 U.S. 1, 20-21,88 S.Ct. 1868; Camara v. Municipal Court (1967), 387 U.S. 523, 536-537,87 S.Ct. 1727.)
 {¶ 18} In Brown v. Texas (1979), 443 U.S. 47, 99 S.Ct. 2637, the Supreme Court set forth a balancing test for the reasonableness of stops and seizures under the Fourth Amendment. "Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Brown, supra, at 50-51. The stop of Topps as a potential witness to a crime meets these three requirements.
 {¶ 19} With regard to the first prong, the gravity of the public concerns served by the seizure, police initially responded to the scene, a high crime area, as the result of *Page 6 
two reported situations requiring police involvement: a possible domestic violence and a pedestrian who may have been run over or dragged by a vehicle. Both situations involve the apprehension of criminals involved in serious criminal offenses of concern to the public. Concern regarding locating and aiding any potential victims is also a great public concern. Although the record does not state whether or not the white male had anything to do with the dispatched incidents, this should not matter. An individual screaming in public in the early hours of the morning in a high crime area should be investigated by the police, regardless of whether his current actions signal direct involvement with an ongoing investigation.
 {¶ 20} The second requirement, the degree to which the seizure advances the public interest, is also met here. Police were investigating two reported incidents of public concern. A police sergeant received a report from a citizen that a man was screaming. He naturally went to investigate this matter. As the police approached the screaming man, Topps, standing nearby, began to walk away. Topps's close proximity to the man strongly suggests that he may have had knowledge about why the man was screaming. Taken as a whole, his proximity to both the screaming white male and the Dixie Lounge suggests that Topps may also have had information about the dispatched incidents. Stopping him momentarily to determine his knowledge of why the man was screaming clearly advances the public interests at stake.
 {¶ 21} Finally, the third factor of Brown, concerning the severity of interference with personal liberty, is satisfied. At the motion to suppress hearing, the police testified that they only wanted to question Topps to see what his involvement was with the screaming man, whether he was a witness, a victim, etc. Because it appears that Topps *Page 7 
was not involved whatsoever with the screaming man, it may have taken only a few minutes to resolve these issues through simple questioning. A momentary stop for questioning is hardly a severe interference with personal liberty. It was not until Topps began to walk away from the scene and then ignored commands to stop that police used actual force to detain him.
 {¶ 22} As with all Fourth Amendment seizure issues, the ultimate question is whether the police acted reasonably. As all three requirements of Brown are met, the police acted reasonably here. Regardless of the Brown standards, common sense dictates that in certain situations police should be permitted to momentarily detain possible witnesses to crime.
 {¶ 23} Numerous jurisdictions throughout the country permit police to detain potential witnesses. In People v. Hernandez (NY. Sup.Ct. 1998),177 Misc.2d 882, 679 N.Y.S.2d 798, a police detective received reports from several witnesses that an Isuzu SUV had been fired upon by unknown assailants. Id. at 883. There was no evidence that the driver or any of the passengers of the SUV were involved in the crime. Id. The detective put out an "APB" for the vehicle. Id. A different police officer spotted a vehicle matching the description and stopped it. Id. At 883-84. A search of the vehicle revealed contraband. Id. at 884. The court found that the stop was reasonable in order for the police to see if the vehicle's occupants required medical attention and to determine whether they were witnesses to the shooting. Id. at 889.
 {¶ 24} In State v. Pierce (Vt. 2001), 173 Vt. 151, 787 A.2d 1284, a police officer observed a Saab motor vehicle backing the wrong way down a road towards an off-ramp where a Honda motor vehicle was parked on the side of the road. Id. at 152. The *Page 8 
Saab came to rest side-by-side with the Honda. Id. The police officer approached both vehicles, got out and went to question the driver of the Saab, upon whom he detected the smell of alcohol. Id. At this time the Honda began to move away from the scene. Id. The police officer ordered the driver of the Honda to stop the vehicle and stated that he wanted to speak with him. Id. As the officer spoke with the driver of the Honda, he noticed the smell of alcohol on him as well. Id. Police charged the driver of the Honda with driving under the influence. Id. Later the driver moved to suppress all evidence of the stop. Id. The court concluded that police acted reasonably in briefly detaining the driver of the Honda in order to allow the police to identify and briefly question a probable witness to a DUI. Id. at 157.
 {¶ 25} See also State v. Mitchell (Wash.App. 1 2008),143 Wash.App. 1024, 2008 WL 555947 at *3 ("[A] brief detention of a potential witness to a crime is permitted, so long as it meets the Fourth Amendment's reasonableness requirement."); Beauvois v. State (Alaska Ct.App. 1992), 837 P.3d 1118, 1121 ("[T]his court specifically recognized the authority of the police to conduct investigative stops of potential witnesses to a recent criminal occurrence, even where there is no reason to believe that the person stopped participated in the crime."); Barhnhard v.State (Md.App. 1991), 86 Md.App. 518, 529, 587 A.2d 561 ("The momentary detention of a material witness to allow the police to investigate a crime is permissible, even if the police do not suspect the person of wrongdoing.")
 {¶ 26} These cases all cite approvingly to the Model Code ofPre-Arraignment Procedures § 110.2(1)(b) (1975). See also 4 Wayne R. LaFave (4th ed. 2006), Search and Seizure: A Treatise on theFourth Amendment § 9.2(b); Kolender v. Lawson (1983), *Page 9 461 U.S. 352, 366 n. 3, 103 S.Ct. 1855 (Brennan, J., concurring) (Citing to the Code, supra, and commenting that "[p]olice officers may have a similar power with respect to persons whom they reasonably believe to be material witnesses to a specific crime."). The Code allows an officer to make a stop whenever:
 {¶ 27} "(i) The officer has reasonable cause to believe that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of or danger to property, has just been committed near the place where he finds such person, and
 {¶ 28} "(ii) the officer has reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and
 {¶ 29} "(iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime."
 {¶ 30} We conclude that these standards for a constitutionally reasonable stop of a potential witness to a crime are both practical and sensible. We also find that the stop of Topps meets all three requirements. With regard to the first prong, police were recently dispatched to the area around where Topps was arrested in order to investigate a possible violent crime or accident. That fact, combined with a man screaming in public could reasonably have made police believe that a misdemeanor or felony involving danger or forcible injury was occurring or had just occurred.
 {¶ 31} Topps's proximity to the screaming man supports the second requirement. Common sense would suggest that if one is standing within an arm's length of a screaming man in the early morning hours, one may have some knowledge of material aid to the police, such as why he is screaming or who he is. As it happens, this may not have been the case here, but a police officer could reasonably have concluded that *Page 10 
Topps would likely have had knowledge of circumstances that would have been useful to the investigation of the matter.
 {¶ 32} Lastly, fulfilling the third requirement, the stop of Topps was a reasonable measure for police to take in order for the police to assess the situation with the screaming man. All that deputies knew when they arrived was that there had been reports of a crime in the area and that a man was screaming. A grown man screaming in public in the wee hours of the morning would be an odd and alarming sight. Saylor testified that he felt something was "very, very" wrong. The white male may have been in hysterics. Topps could have appeared to police to be the one person who was most capable of explaining the situation to police. It was reasonable to momentarily detain Topps in order to determine whether he knew the screaming man, and whether he had any information about what crime, if any, had just occurred.
 {¶ 33} In conclusion, given the totality of the circumstances, including the ongoing police investigation near the Dixie Lounge, the screaming man, and Topps's arm's-length proximity to the screaming man, police acted reasonably in stopping him as a potential witness to a serious crime under the standards defined both in Brown v. Texas, supra, and the Model Code of Pre-Arraignment Procedure.
 {¶ 34} We also note that the momentary detention of a potential witness to a criminal act in order to obtain basic information concerning the identity of the witness is within the contemplation of R.C. 2921.29, which provides, in pertinent part:
 {¶ 35} "(A) No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following: *Page 11 
 {¶ 36} "(1) The person is committing, has committed, or is about to commit a criminal offense.
 {¶ 37} "(2) The person witnessed any of the following:
 {¶ 38} "(a) An offense of violence that would constitute a felony under the laws of this state;
 {¶ 39} "(b) A felony offense that causes or results in, or creates a substantial risk of, serious physical harm to another person or to property[.]" (Emphasis added.)
 {¶ 40} We conclude that the conduct of the Montgomery County Sheriffs deputies did not constitute an unlawful search and seizure.
 {¶ 41} Topps's sole assignment of error is overruled.
 III {¶ 42} Topps's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.
Copies mailed to:
Mathias H. Heck, Jr. Michele D. Phipps Michael H. Holz Hon. Barbara P. Gorman *Page 1