**The STATE of Ohio, Appellant,**

v.

**GULLEY, Appellee.**

[Cite as *State v. Gulley*, 181 Ohio App.3d 117, 2009-Ohio-692.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22944.

Decided Feb. 13, 2009.

---

**118**

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellant.

Brian D. Weaver, Public Defender, for appellee.

FAIN, Judge.

{¶ 1} May a police officer briefly detain one of two pedestrians to inquire about the circumstances of his companion, who is staggering and venturing from time to time out onto the traveled portion of a roadway, for the purpose of determining whether, and how best, to provide assistance to the apparently impaired pedestrian? This is a close question. We answer it in the affirmative.

I

{¶ 2} The facts are succinctly set forth by the trial court as follows:

{¶ 3} "On January 6, 2008, at approximately 2:30 a.m., Officers Amy Simpson and Eric Steckel, while on routine patrol, observed Defendant [appellee Hershel Gulley] and a female known as Melissa Spitzer walking on the West side of the 100 block of Hollencamp Avenue in Dayton, Ohio. The couple appeared to be

together. This was a very cold and snowy early morning and there was no foot or automobile traffic at the time. This area of Hollencamp Avenue is a residential area and is known by police as a high drug offense area with numerous complaints, stops, and arrests related to drugs and weapons activity.

{¶ 4} "The officers observed Ms. Spitzer, while walking, stagger back and forth into the street. Defendant was not staggering. This area did not have sidewalks. The officers presumed Ms. Spitzer to be intoxicated and were concerned for her safety since she was staggering in and out of the traveled portion of the roadway. Officer Simpson testified that the two together, coupled with Ms. Spitzer's behavior, raised suspicion that Ms. Spitzer might be the subject of violence, although no visible injuries were observed.

{¶ 5} "The cruiser pulled up along side Defendant and Ms. Spitzer with the cruiser facing the wrong direction for its then lane of travel. Both officers in uniform and with firearms, although not drawn, exited the cruiser. Officer Simpson said 'stop' and then asked 'can we talk?' Officer Simpson observed Defendant put his hands to his side, clinch both fists, and begin to walk away quickly. Officer Simpson was attempting to determine if Ms. Spitzer was physically impaired, intoxicated, or the subject of violence. Officer Simpson testified that at this point she did not observe on Ms. Spitzer any evidence of violence or visible injuries.

{¶ 6} "Officer Simpson then commanded Defendant to 'stop' and 'come back.' Officer Simpson observed no illegal activity by Defendant to this point and there was nothing about Defendant's appearance to lead the officers to believe that Defendant was armed or could be dangerous. In response to Officer Simpson's commands, Defendant turned around and paused. Defendant's fists remained clinched. Officer Simpson followed after Defendant and Defendant complied and began to walk back with Officer Simpson. Officer Simpson testified that at this point, Defendant was not free to go.

{¶ 7} "At this point, Defendant began to put a hand into his pocket and Officer Steckel immediately shouted 'don't.' Officer Steckel then grabbed Defendant's arm and Defendant tensed and pulled away. Officer Steckel then took Defendant to the ground. As they struggled, Defendant threw down a baggie containing a white substance, later determined to be crack cocaine.

{¶ 8} "Defendant was handcuffed, placed in the cruiser and charged with Possession of Crack Cocaine.

{¶ 9} "During the struggle between Officer Steckel and Defendant, Ms. Spitzer had been ordered to the ground. Once she was back on her feet, Officer Simpson determined that no violence had befallen Ms. Spitzer, but that she was intoxicated."

{¶ 10} There is evidence in the record to support the trial court's findings.

{¶ 11} Gulley moved to suppress the evidence recovered at the scene, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court agreed with Gulley and ordered the evidence suppressed.

{¶ 12} From the trial court's order suppressing evidence, the state appeals.

## II

{¶ 13} The state's sole assignment of error is as follows:

{¶ 14} "The trial court erred when it sustained Gulley's motion to suppress because the officers acted reasonably in detaining Gulley under the circumstances."

{¶ 15} The trial court based its suppression order upon its legal conclusion that Gulley was detained when he was ordered to "stop" and "come back," and that this detention was unlawful:

{¶ 16} "Based on this record and admittedly a close call, the Court finds that under *Terry* [*v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889,] and its progeny, the officers lacked reasonable articulable suspicion to seize Defendant when they did.

{¶ 17} "Because Defendant's seizure was constitutionally infirm, Defendant's discard (when Officer Steckel took Defendant to the ground) of the baggie containing crack cocaine is fruit of the poisonous tree as are Defendant's statements, if any."

{¶ 18} Both parties analyze the crucial issue in this appeal as whether the police officers had a proper basis for detaining Gulley. The trial court appears to have concerned itself solely with whether the officers had a reasonable and articulable suspicion that Gulley was involved in criminal activity when he was detained; it concluded, correctly in our view, that the officers did not.

{¶ 19} But at the suppression hearing, the state alluded, at least, to the issue of whether the officers had a reasonable basis for detaining Gulley based upon their concerns about Spitzer's apparent impairment:

{¶ 20} "And even though the defendant wasn't staggering, he was with an individual who was staggering. The two, you can't get the two people individually. They were together. The two of them were together. And based on the fact that she was staggering, they didn't know if she was intoxicated but they just knew that she was impaired in some way. So the officers had every right to stop them to determine why she was impaired, to find out—to do a field interview to determine what was going on in this particular case."

{¶ 21} In its appellate brief, the state more directly makes the argument that the officers could reasonably stop Gulley, briefly, to make an investigation for the sake of Spitzer's physical safety, independently of any suspicion they may have had concerning Gulley's involvement in criminal activity. The state cites *State v. Norman* (1999), 136 Ohio App.3d 46, 54, 735 N.E.2d 953:

{¶ 22} "Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out 'community caretaking functions' to enhance public safety. The key to such permissible police action is the reasonableness required by the Fourth Amendment. When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base her safety concerns. Such a requirement allows a reviewing court to answer *Terry*'s fundamental question in the affirmative: 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' [*Terry,*] 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906."

{¶ 23} *Norman* is a decision of the Third District Court of Appeals. The state also cites two decisions of this court: *Xenia v. McDaniel* (June 30, 2000), Greene App. No. 2000–CA–7, 2000 WL 873212, and *State v. Mullins* (May 19, 2000), Montgomery App. No. 17892, 2000 WL 639604, for the proposition that the reasonable purpose of the police in making a brief stop need not always be the investigation of possible criminal activity. The former case involved a stop of a motorist to inform him that he was no longer welcome at the residence of the woman with whom he had a relationship. We upheld that stop as reasonable. The latter case involved the stop and arrest of an apparently intoxicated man who was seen to fall face first while walking in a ditch alongside a road. We upheld that arrest, for the minor misdemeanor of disorderly conduct, upon the basis that the officer had a reasonable concern for the pedestrian's safety.

{¶ 24} Gulley distinguishes these cases upon the ground that unlike the persons stopped in these cases, "there is no indication that Appellee [Gulley] was doing anything more than walking." We are not persuaded by this distinction.

■ {¶ 25} In some instances, a police officer may reasonably conduct a brief stop of a witness to events for the purpose of gathering information material to the police officer's legitimate purposes. In *State v. Topps,* Montgomery App. No. 22281, 2008-Ohio-4021, 2008 WL 3199500, we upheld the reasonableness of a stop of a pedestrian in close proximity to a screaming man who was evidently in great distress for some unknown reason:

{¶ 26} "The second requirement [of *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357], the degree to which the seizure advances the public

interest, is also met here. Police were investigating two reported incidents of public concern. A police sergeant received a report from a citizen that a man was screaming. He naturally went to investigate this matter. As the police approached the screaming man, Topps, standing nearby, began to walk away. Topps's close proximity to the man strongly suggests that he may have had knowledge about why the man was screaming. Taken as a whole, his proximity to both the screaming white male and the Dixie Lounge suggests that Topps may also have had information about the dispatched incidents. Stopping him momentarily to determine his knowledge of why the man was screaming clearly advances the public interests at stake.

{¶ 27} "Finally, the third factor of *Brown,* concerning the severity of interference with personal liberty, is satisfied. At the motion to suppress hearing, the police testified that they only wanted to question Topps to see what his involvement was with the screaming man, whether he was a witness, a victim, etc. Because it appears that Topps was not involved whatsoever with the screaming man, it may have taken only a few minutes to resolve these issues through simple questioning. A momentary stop for questioning is hardly a severe interference with personal liberty. It was not until Topps began to walk away from the scene and then ignored commands to stop that police used actual force to detain him." *Topps,* 2008-Ohio-4021, 2008 WL 3199500, at ¶ 20–21.

{¶ 28} The circumstances in the case presently before us appear indistinguishable from the circumstances in *Topps.* In each case, the police wished to stop a pedestrian, briefly, to question the pedestrian why another pedestrian at the scene was acting in a manner that led the police to reasonably suspect that the other pedestrian was impaired in a manner that required police assistance of some kind. In each case, the concern that the police had for the safety of the apparently impaired individual was a reasonable public interest justifying a brief stop of an individual in that individual's capacity as a witness, not as a suspect.

{¶ 29} The state's sole assignment of error is sustained.

### III

{¶ 30} The state's sole assignment of error having been sustained, the order of the trial court from which this appeal is taken is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN, J., concurs.

DONOVAN, P.J., dissents.

DONOVAN, Presiding Judge, dissenting.

{¶ 31} I disagree. In *State v. Topps*, Montgomery App. No. 22281, 2008-Ohio-4021, 2008 WL 3199500, we concluded "that under *limited circumstances*, a police officer may briefly detain a potential witness to a criminal act for investigative purposes, even though the officer has no reasonable basis for concluding that the potential witness is, or may have been, involved in the criminal activity that the police officer is investigating, consistently with the Fourth Amendment." (Emphasis added.) Id. at ¶ 15. This is not one of those *limited circumstances*. *Topps* is distinguishable. *Topps* involved a dispatch for domestic violence and a pedestrian who may have been run over and dragged by a vehicle. In *Topps,* as noted by the majority, the police encountered a screaming individual and a potential witness nearby. Clearly, there was a public interest in seizing the potential witness to a violent crime.

{¶ 32} I fail to see the comparison when the concern here is for an individual walking in the roadway, a minor offense under the traffic code, and/or a minor misdemeanor, public intoxication. The relative public concern is certainly not as great.

{¶ 33} I cannot conclude that the officer had a specific articulable suspicion that Gulley was involved in a crime or a witness thereto. Assuming arguendo that a brief stop of Gulley was necessary to acquire information about an intoxicated female, the facts on this record do not justify grabbing hold of him and forcing him to the ground. These officers lacked a reasonable suspicion that Gulley was engaged in criminal activity when they ordered him not to place his hands in his pocket on a cold night. In fact, the record does not affirmatively establish that he was given an opportunity to comply before he was physically seized by the arm. Nor does the mere fact of walking away initially indicate that the officers were dealing with an armed and dangerous individual.

{¶ 34} Finally, absent any basis for suspicion of misconduct, the balance between the public interest in crime prevention and Gulley's right to personal security and privacy tilts in favor of freedom from police interference. See *Brown v. Texas* (1979), 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357. I would affirm the decision of the trial court granting the motion to suppress.