2006 VT 42

**STATE of Vermont v. Dennis NAULT**

[908 A.2d 408]

No. 05-103

¶ 1. May 12, 2006. Defendant Dennis Nault appeals the district court decisions denying his motion to suppress evidence he maintains was acquired as a result of an illegal traffic stop and entering judgment for the State in defendant's civil license suspension proceeding. We affirm.

¶ 2. At around 9:45 p.m. on October 30, 2004, Chief Paul Duquette of the Newport Police Department was on patrol in an unmarked police cruiser. He was accompanied by a prospective employee who was a police officer in another state[1] and was in the cruiser for a "ride along." While driving along Derby Road, Chief Duquette noticed a car parked in a farm stand parking lot; the farm stand was closed for the season. He also observed an occupant in the driver's seat. He

---

[1] The prospective employee is now a police officer with the Newport Police Department.

pulled his cruiser along the side of the parked vehicle and stopped it at an angle about ten to twelve feet away. He left the headlights of the unmarked cruiser on, but did not activate its blue flashing lights. He exited the cruiser, taking a flashlight with him. His gun was holstered, and he was dressed in civilian clothes. The prospective employee was wearing a dark blue sweatshirt which "said something like 'Montague Police' across the back." The trial court concluded that the prospective employee "took a 'back up' position about 8-10 feet behind Duquette, also on the driver's side of the parked car."

¶ 3. Chief Duquette approached the driver side window of defendant's car and illuminated the interior with his flashlight. He noticed defendant asleep in the driver's seat, with his head back against the head rest. He recognized defendant from past personal experience. He tapped a few times on the glass window in attempts to wake defendant from his sleep, and eventually defendant woke up. Chief Duquette then told defendant to "open the door." Defendant complied and opened the door. Chief Duquette did not order defendant to exit the vehicle at that time.

¶ 4. When defendant opened his door, Chief Duquette smelled a heavy odor of alcohol and saw an open can of Michelob Light beer next to defendant. Defendant's eyes appeared bloodshot and watery. The chief then asked defendant if he knew where he was, to which defendant replied that he was "in my driveway." Defendant's speech was slurred, and he was mumbling. Chief Duquette suspected defendant was intoxicated and had been in control of his vehicle while under the influence of intoxicating liquor. He radioed for police back-up. When he told defendant what he was doing, defendant started up the car. Chief Duquette immediately ordered defendant to turn off the car and hand over the keys, which de-

fendant did. About two minutes later, the second patrol car arrived and parked "directly behind Defendant's vehicle, blocking him in." Officers subsequently asked defendant to perform field sobriety tests, which he failed. Ultimately, defendant was taken back to police headquarters for processing for a violation of 23 V.S.A. § 1201(a) (DUI), and for refusal to provide a breath sample, 23 V.S.A. § 1205(a).

¶ 5. On appeal, defendant argues that two essential findings of fact by the trial court are clearly erroneous, and that the trial court erred in concluding that no seizure had occurred when law enforcement officers approached his car and asked him to open the door. Defendant claims that all evidence obtained as a result of the illegal seizure should be suppressed.

¶ 6. The first finding defendant contests is the finding that the prospective employee was positioned next to defendant's vehicle during defendant's interaction with the chief, as opposed to behind the vehicle as defendant contends. The trial court found that:

> Without discussion from or direction from Duquette, [the prospective employee] exited the cruiser and took a "back up" position about 8-10 feet behind Duquette, also on the driver's side of the parked car. There is no evidence she said anything, or did anything more than just stand there and observe.

Defendant's second issue is with the trial court's finding of the point at which Chief Duquette decided defendant was not free to leave. The trial court found:

> Chief Duquette did not make the determination in his own mind that Defendant would not be "free" to drive away[] until after Nault had woken up and

the Chief observed the strong smell of alcohol, and Defendant's bloodshot eyes, mumbled speech and impaired motor skills.

¶ 7. On appeal from a denial of a motion to suppress, this Court applies a deferential standard of review to the trial court's finding of fact. *State v. Rheaume*, 2005 VT 106, ¶ 6, 179 Vt. 39, 889 A.2d 711. Findings of fact shall not be set aside on review unless clearly erroneous. *Miller v. Miller*, 2005 VT 89, ¶ 18, 178 Vt. 273, 882 A.2d 1196. Under the clearly erroneous standard, we will "uphold the court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them." *Rheaume*, 2005 VT 106, ¶ 6 (citations omitted).

¶ 8. As to the first finding, the parties agree on the relevant evidence, but not on its meaning. Based on the record before us, Chief Duquette testified that the other officer "positioned herself behind Mr. Nault's vehicle (inaudible) . . . on the driver's side[,] so there was two-thirds of the length of the car (inaudible)." According to defendant, the only possible interpretation of the record is that the prospective employee was standing behind defendant's vehicle and thereby actively prevented him from exiting the scene. On the contrary, we find the statement to be, at most, ambiguous because of the inability to transcribe some of the testimony. The first fragment from the sentence suggests that the prospective employee was standing directly behind defendant's vehicle, as defendant submits. The second fragment suggests that she was standing on the driver's side of the vehicle.

¶ 9. "Deferential appellate review of a trial court's factual findings on motions to suppress is appropriate because determining the weight of evidence and credibility of witnesses is primarily for the trier of fact." *State v. Lawrence*, 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 (mem.). Applying this standard, we believe the finding is supported by the evidence. In addition to relying on the chief's testimony that the other officer was "on the driver's side" of the vehicle, the court could have also concluded that the prospective employee was not standing behind defendant's vehicle or she would not have been in the back-up position that the chief also described in more detail.

¶ 10. We recognize that we have only an incomplete record of the chief's testimony, and we might view this issue differently if we had the complete testimony. To the extent that the transcript did not truly disclose the testimony, it was defendant's burden to seek a modification of the record under Vermont Rule of Appellate Procedure 10(e). See *State v. Nguyen*, 173 Vt. 598, 601, 795 A.2d 538, 542 (2002) (mem.) (finding defendant's failure to invoke V.R.A.P. 10(e) procedure for fixing transcript waived his claim of error as to the transcript). We further note defendant has presented no evidence that he was even aware of the other officer's presence at the scene prior to the chief's demand for the keys.

¶ 11. As to defendant's second contested finding, which specified when Chief Duquette believed he had sufficient cause to detain defendant, the evidence from Chief Duquette was conflicting. Defendant relies primarily on an answer in the chief's deposition that states that if defendant had tried to drive away when the chief first woke him, the chief would have "[e]ither knocked on the window to get his attention or . . . would have had to got [sic] back in [his] cruiser and activated the lights and stopped him." The unsigned deposition, however, was before the court only to the extent defense counsel used specific answers at the evidentiary hearing for impeachment or to

refresh the chief's recollection, and defense counsel never made use of this answer at the hearing.

¶ 12. Nonetheless, even if we concluded that the court's finding on this issue was clearly erroneous, our conclusion would not result in reversal of the trial court's decision. Chief Duquette's subjective belief as to when defendant was free to leave is not controlling on the issue. See *State v. Burgess*, 163 Vt. 259, 261, 657 A.2d 202, 203 (1995) (finding subjective intent of officer in flashing blue lights irrelevant to determination of whether or not a seizure occurred). The presence or absence of a finding on this question would not affect our result. We apply a de novo standard of review to the ultimate legal conclusion of whether the actions of the police officer constituted a seizure of defendant. *Lawrence*, 2003 VT 68, ¶ 8.

¶ 13. Defendant's second and main argument is that Chief Duquette seized him when the chief encountered defendant asleep in his vehicle in the parking lot and ordered him to open the door. Defendant contends this seizure violated his rights under the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution because the officer did not have the requisite reasonable and articulable suspicion of wrongdoing necessary to perform a stop. Accordingly, he submits that all evidence seized as a result of the illegal stop must be suppressed. The trial court rejected this argument, concluding that the seizure did not occur until defendant started his automobile and Chief Duquette ordered him to turn it off. Since the court found that the seizure occurred after defendant had opened his car door and at that time Chief Duquette had reasonable suspicion that defendant was intoxicated, the court denied the motion to suppress.

¶ 14. We agree with defendant that the seizure must be based on reasonable and articulable suspicion of wrongdoing and the suspicion must precede the seizure. *State v. Marcello*, 157 Vt. 657, 657-58, 599 A.2d 357, 358 (1991) (mem.). Defendant's argument as to when the seizure occurred focuses almost entirely on Chief Duquette's alleged command for defendant to open his car door. Citing cases from outside Vermont, defendant argues that a command to open the car door is by itself a seizure as a matter of law.

¶ 15. Although we agree that the case is close, we cannot agree either factually or legally with defendant's argument. The trial court made no specific finding on what Chief Duquette said immediately before defendant opened his car door, although in response to a post-judgment motion to stay, the court stated that the chief's statement was not a request. In his testimony, Chief Duquette stated that he asked defendant to open the door in a normal conversational tone. Defense counsel sought a more precise description of Chief Duquette's words but abandoned the line of questioning before obtaining a response. In describing the interaction between defendant and Chief Duquette in its opinion, the trial court borrowed words from the dissent in *State v. Jestice*, 2004 VT 65, ¶ 14, 177 Vt. 513, 861 A.2d 1060 (mem.) (Dooley, J., dissenting) (quotation omitted), and applied them to this case:

> There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command [until Nault turned on the ignition], not even an authoritative tone of voice.

Thus, the court found that Chief Duquette's words did not constitute a command.

¶ 16. Defendant bore the burden to prove that Chief Duquette's words constituted a command as he alleged. See

*Sturtz v. Municipality of Anchorage*, 1997 WL 796505, at *3 (Alaska Ct. App. 1997) (unpub.) (holding defendant would have to show that officer's communication "took the form of an 'order' as opposed to a 'request'" to establish a seizure had occurred).[2] He failed to meet that burden, and the trial court made a finding against him.

¶ 17. The decisions from other jurisdictions are divided as to whether an officer's request to roll down a window or open a door constitutes a seizure. Compare *State v. Patterson*, 2005 ME 26, ¶ 16, 868 A.2d 188 (holding on "precise" facts of particular case that officer's order to open door was a seizure)[3];

*Borowicz v. N.D. Dep't of Transp.*, 529 N.W.2d 186, 188 (N.D. 1995) (noting that if request to open door is viewed as order, a seizure arguably occurred); *Ebarb v. State*, 598 S.W.2d 842, 850 (Tex. Crim. App. 1979) (holding order to roll down window or open door is a seizure); with *Akins v. State*, 596 S.E.2d 719, 722 (Ga. Ct. App. 2004) (asking citizen to roll down window does not require reasonable suspicion "as long as the officers do not detain the citizen or create the impression that the citizen may not leave"); *Medley v. State*, 630 So. 2d 163, 165 (Ala. Crim. App. 1993) (finding no seizure because "officer merely tapped on the window and requested the appellant to roll down the window"). Professor LaFave states in his treatise on the Fourth Amendment that the line for whether a defendant has been seized is between when the officer makes a request (no seizure) and makes a command (seizure); but, as the fact-finding in this case demonstrates, that line is far from bright. See 4 W. LaFave, Search and Seizure § 9.4(a), at 433 (4th ed. 2004) ("A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order [to] do so."). Moreover, in determining when a seizure occurred, we will consider all the circumstances surrounding the incident. *Jestice*, 2004 VT 65, ¶ 5. Thus, we must look to defendant's encounter with Chief Duquette as a whole to determine whether, "given all of the circumstances, the encounter is so intimidating that a reasonable person would not feel free to leave without responding to the officer's requests." *Id.*

¶ 18. A number of factors cause us to find that no seizure occurred when Chief Duquette spoke to defendant about opening the door. The chief was in an

---

[2] *Sturtz* is on point with the facts of this case and follows *Willie v. State*, 829 P.2d 310, 312 (Alaska Ct. App. 1992), in allocating the burden of proof to the defendant to establish that the government conducted an impermissible warrantless search or seizure. Although we have never decided this issue, most courts rely upon *Rakas v. Illinois*, 439 U.S. 128, 130-31 n.1 (1978), in holding that the "proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." See *United States v. Moore*, 22 F.3d 241, 243 (10th Cir. 1994); *United States v. Bachner*, 706 F.2d 1121, 1125-26 (11th Cir. 1983); *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986), *overruled on other grounds by Handy v. State*, 189 S.W.3d 296 (Tex. Crim. App. 2006).

[3] Defendant relies heavily upon *Patterson*, but we note that this decision is very fact specific. Relevantly, in reaching its *Patterson* decision, the Maine Supreme Court distinguished a factually similar case, *State v. Gulick*, 2000 ME 170, 759 A.2d 1085. In light of the Maine court's discussion of *Gulick*,

we believe that the case at bar is actually closer to *Gulick* than to *Patterson*.

unmarked car and was not in uniform. Although he had a gun, he did not display it to defendant. He did not apply force, block the exit, threaten, or command. He spoke in a conversational tone. Based on all the facts, we find that no seizure occurred until Chief Duquette directed defendant to turn off the car. By this time, Chief Duquette had reasonable suspicion of wrongdoing.

*Affirmed.*

Motion for reargument denied June 9, 2006. Motion to stay mandate denied July 19, 2006.