933 A.2d 239 (2007)
2007 VT 85
STATE of Vermont
v.
Kurt WILLIAMS.
Nos. 06-438, 06-439.
Supreme Court of Vermont.
August 23, 2007.
*240 Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.

ENTRY ORDER
¶ 1. Defendant Kurt Williams challenges the denial of his motion to suppress. Defendant entered a conditional guilty plea to driving under the influence of alcohol (DUI) in violation of 23 V.S.A. § 1201(a)(2), following a judgment for the State in the civil suspension proceeding after a hearing. Defendant argues that the DUI checkpoint at which he was stopped was unconstitutional because fewer than five state troopers were operating the checkpoint at the time of his arrest, contrary to state police procedural guidelines. We affirm.
¶ 2. Upon appeal of a motion to suppress, this Court applies a deferential standard of review to the trial court's findings of fact. State v. Rheaume, 2005 VT 106, ¶ 6, 179 Vt. 39, 889 A.2d 711. Findings of fact shall be upheld unless clearly erroneous. Id. Legal conclusions are reviewed de novo. State v. Yoh, 2006 VT 49A, ¶ 10, 180 Vt. 317, 910 A.2d 853 (quoting State v. Beer, 2004 VT 99, ¶ 24, 177 Vt. 245, 864 A.2d 643).
¶ 3. On March 29, 2006, state troopers set up a DUI checkpoint on Route 100 in Weston. The checkpoint was set up according to state police guidelines for DUI checkpoints. The guidelines delineate where to station vehicles, where to place signs and cones, and other technicalities for conducting a checkpoint. The guidelines state that a minimum of five troopers "will be used" at a checkpoint if traffic is going to be stopped in both directions. *241 The troopers stopped vehicles traveling both north and south on Route 100. Six troopers were present when the roadblock commenced at 9:18 p.m.
¶ 4. Three DUI arrests were made at the checkpoint. After the first arrest was made around 10:40 p.m., one trooper left the checkpoint to process the individual in custody. Another trooper left the checkpoint shortly thereafter with a second person in custody. The commanding trooper decided to continue operating the checkpoint with four troopers.
¶ 5. Defendant entered the checkpoint around 10:45 p.m. After initial observations, the defendant was asked to perform field sobriety tests and provide a preliminary breath sample. Following these results, defendant was taken into custody on suspicion of DUI and was transported for processing by a trooper. With only three troopers remaining, the commanding trooper ended the checkpoint at 11:04 p.m.
¶ 6. Testifying at a joint suppression and civil-suspension merits hearing, the commanding trooper acknowledged that there were only four troopers operating the checkpoint when defendant's vehicle was stopped. The trial court nevertheless denied the motion to suppress, concluding that the presence of only four officers was not "so unreasonable as to warrant striking down the checkpoint as unconstitutional." On appeal, defendant argues that allowing police discretion in applying procedural guidelines "offends the proper balance . . . between the public's strong interest in safety on the highways and the individual's right to be free from improper seizures," resulting in an infringement on his basic constitutional rights.
¶ 7. Citizens have the right "`to personal security free from arbitrary interference by law officers'" State v. Record, 150 Vt. 84, 87, 548 A.2d 422, 424 (1988) (quoting Brown v. Texas, 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). Both the Fourth Amendment to the United States Constitution and Chapter, Article 11 of the Vermont Constitution require that searches be reasonable. Id. at 85, 548 A.2d at 424. "Reasonableness depends upon all the circumstances surrounding each search and seizure." State v. Lawrence, 2003 VT 68, ¶ 11, 175 Vt. 600, 834 A.2d 10 (mem.) (citing United States v. Montoya de Hernandez, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). DUI checkpoints are considered seizures both by this Court and the United States Supreme Court. State v. Martin, 145 Vt. 562, 567, 496 A.2d 442, 446 (1985) (citing Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Accordingly, the constitutionality of a DUI checkpoint depends on the reasonableness of the seizure, determined by balancing "the public interest in the seizure against the degree of intrusion into personal privacy." Martin, 145 Vt. at 568, 496 A.2d at 446.
¶ 8. To ensure that the balance of interests is maintained and that checkpoints are not subject to abuse, this Court has set forth six criteria to test whether a DUI checkpoint passes constitutional muster:
(1) the initial stop and the contact between the officers in the field and the motorist involves an explanation of the nature of the roadblock and minimal detention of a nonimpaired driver; (2) the discretion of the officers in the field, as to the method to be utilized in selecting vehicles to be stopped, is carefully circumscribed by clear objective guidelines established by a high level administrative official; (3) the guidelines are followed in the operation of the roadblock; (4) approaching drivers are given adequate warning that there is a roadblock *242 ahead; (5) the likelihood of apprehension, fear or surprise is dispelled by a visible display of legitimate police authority at the roadblock; and (6) vehicles are stopped on a systematic, nonrandom basis that shows drivers they are not being singled out for arbitrary reasons.
Martin, 145 Vt. at 571, 496 A.2d at 449. These criteria are intended to ascertain the reasonableness of DUI checkpoints and assist courts in balancing the intrusion against an individual's privacy. Id.
¶ 9. Relevant to the present case are criteria (2) and (3). Defendant argues that because the presence of only four troopers violated the guidelines, the checkpoint violated the third Martin criterion that "guidelines are followed," thus resulting in an unconstitutional checkpoint. Defendant also contends that the violation of criterion (3) allowed the commanding trooper to exercise discretion at the checkpoint in deciding the minimum number of troopers needed, in violation of criterion (2). We disagree that discretion in staffing the checkpoint necessarily leads to an unconstitutional intrusion. The guidelines referred to in criterion (3), so important in Martin, are the guidelines required by criterion (2) for the "method to be utilized in selecting vehicles to be stopped." Read together, the two criteria are intended to "carefully circumscribe" police discretion in the stopping of vehicles, rather than regulate discretion as to how many troopers to have on the scene. Id. at 571, 496 A.2d at 448. Here, defendant does not claim that the guideline violation affected which vehicles were stopped. In fact, the troopers did not use discretion in stopping vehicles; defendant's vehicle was stopped like every other vehicle that passed through the checkpoint. Thus, defendant's claims rest on a deviation from policy that is related to neither the manner in which vehicles were stopped nor to any discretion of the troopers to stop cars.
¶ 10. Further, for suppression to be granted based on an alleged constitutional violation, a "causal nexus must exist between the alleged illegality and the evidence" that a defendant seeks to suppress. State v. Sherwood, 174 Vt. 27, 33, 800 A.2d 463, 467 (2002) (citing State v. Jewett, 148 Vt. 324, 329, 532 A.2d 958, 960 (1987)). The burden is placed on the defendant to prove the connection. Jewett, 148 Vt. at 329, 532 A.2d at 960 (defendants "must establish . . . a causal nexus between the constitutional violation and the evidence sought to be suppressed in order to prevail.").
¶ 11. In this case, defendant has not shown a causal nexus between the commander's deviation from the guidelines and the evidence of defendant's DUI. The trial court found that the troopers stopped every driver on a nonrandom, systematic basis; every car that entered the checkpoint was halted. Thus, the number of troopers present when defendant was stopped was apparently immaterial, and defendant has not shown how he was prejudiced by being stopped when one less trooper was present at the checkpoint. Nor has defendant shown prejudice related to noncompliance with staffing guidelines when he was asked to perform field sobriety tests and provide a preliminary breath test, leading the troopers to suspect a possible DUI. There is no evidence to suggest that the stopping of defendant's vehicle and the results that followed would have been different if five troopers had been operating the checkpoint.
Affirmed.