2010 VT 81

**STATE of Vermont v. Todd P. MARSHALL**

[8 A.3d 1086]

No. 09-469

¶ 1. September 28, 2010. The State appeals from a trial court order finding a traffic stop leading to a DUI investigation unreasonable. The trial court found the detention was based on a traffic violation, but did not find the violation sufficient to support a reasonable suspicion of "criminal activity." Finding that the officer articulated no basis to suspect impaired operation at the time of the stop, the court suppressed evidence of driving under the influence of intoxicating liquor (DUI) obtained by the officer during the ensuing detention, and dismissed the charge against defendant. We reverse and remand.

¶ 2. The trial court found as follows. The arresting officer observed defendant driving east on Route 302 in the Town of Berlin. The officer followed defendant for about a half-mile and observed no erratic driving, speeding, or other violations. On a curve in the road, however, the officer saw defendant's vehicle cross the yellow center line in violation of Vermont's "drive to the right" statute, 23 V.S.A. § 1031(a), which requires that "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway." He stopped defendant for failing to stay to the right. Noting signs of intoxication, the officer then proceeded to collect evidence of DUI and of driving with license suspended (DLS).

¶ 3. The State charged defendant with DUI under 23 V.S.A. § 1201 and DLS under 23 V.S.A. § 674. Defendant moved to suppress the evidence developed after the stop. The officer gave conflicting testimony about the distance and timing of defendant's failure to stay right, estimating that defendant's car crossed the yellow line for as few as five or as many as 200 feet, for between three to five seconds or for as long as two minutes. Nevertheless, the court found that the officer "observed the car cross over the center line of the highway," and that the

> officer observed both the front and rear tires of the vehicle, from a quarter to one half of the vehicle, cross the center line. . . . The driver then returned to his proper lane of travel without further violation or other erratic operation and stopped appropri-

ately when directed to do so by the officer.[1]

[1] In her dissent, our sister Skoglund denies that the court below made these findings of fact, *post*, ¶ 14, but the record reads to the contrary. The trial court related the following:

Based on the applicable law and the credible evidence presented the court issues the following decision:

### FACTS

On December 28, 2008, Berlin Police Officer Christopher Alting was on patrol traveling east towards Barre on Route 302 in Berlin (the Barre-Montpelier Road). He had been following a vehicle for approximately a half to one mile, and as the vehicle passed east of Richardson Road *he observed the car cross over the center line of the highway*. Until that point the officer had observed no erratic operation, excessive speed, or other motor vehicle violations by the operator. As the vehicle went through a curved portion of the highway *the officer observed both the front and rear tires of the vehicle, from a quarter to one half of the vehicle, cross the center line*. The officer's testimony as to the distance, as well as the time, the vehicle traveled in this manner varied greatly. . . . During the time of the alleged violation there was no oncoming traffic in the opposite lane of travel. *The driver then returned to his proper lane of travel* . . . .

(Emphases added.)

In its analysis, the court remarked that while a 200-foot intrusion of half the vehicle into the opposite lane would be a serious violation, the same operation for just three seconds for five feet was not necessarily attributable to DUI. The trial court granted the suppression motion and dismissed the charge, ruling that the State failed to prove that the officer had a

The trial court went on to note that defendant, too, "believes he crossed the center line," but at a spot in the highway where the markings were ambiguous and not clearly visible. The reference to the violation as "alleged" is put in context later by the court's explanation that, in its view, a momentary crossing of the line suggested no criminal wrongdoing worthy of a stop, while a more significant or dangerous failure to stay right would have justified a stop.

Certainly the court did not credit all of the officer's testimony. For example, although reciting the fact that the officer testified about the time and distance of the infraction, the court accepted none of the contents of that testimony as fact, and described the officer's testimony in this regard as varying and uncertain. No such reservation is evident, however, in the court's unequivocal finding that the officer saw defendant's car cross the center line, although the court explained that it could not, based on the same officer's testimony, determine if the crossing was serious enough to support a suspicion of criminal activity.

As discussed further, *infra*, ¶¶ 5-9, the court's emphasis on the seriousness of defendant's failure to keep right, and on the inferences of crime that could or could not be drawn from it, was an incorrect application of the law, since a lawful stop in this case did not depend on a significant violation or a reasonable suspicion of criminal misconduct.

642

reasonable and articulable suspicion that defendant committed a criminal offense. The State appealed.

¶ 4. Suppression motions present a mixed question of law and fact. *State v Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. In reviewing a trial court's decision on a motion to suppress, the court's findings of fact must be upheld unless they are clearly erroneous. *Id.* Whether the facts meet the standard to justify the stop is a question of law, which we review de novo. *Id.*

¶ 5. The State argues that the trial court erred as a matter of law in finding the stop here unjustified. Our case law is clear that if a violation has occurred — even a simple traffic violation — it is reasonable for the police to stop a driver. "A police officer is authorized to make an investigatory stop based on a reasonable and articulable suspicion of criminal activity, *or* of a traffic violation." *State v Davis*, 2007 VT 71, ¶ 7, 182 Vt. 573, 933 A.2d 224 (mem.) (emphasis added, quotation omitted). In *State v Doyon*, 171 Vt. 546, 758 A.2d 816 (2000) (mem.), an officer observed the defendant driving erratically, and then driving down the center of several dirt roads. Although the defendant in *Doyon* was driving on an unpaved road, presumably without a center line, we held that "[g]iven [the] defendant's failure to stay to the right, as required by statute, the officer was justified in stopping him." *Id.* at 546, 758 A.2d at 817.

¶ 6. In similar cases, we have found stops justified where officers had reason only to suspect that a noncriminal motor vehicle code violation occurred. For example, we held in *State v Beauregard* that "a noisy exhaust system can provide a reasonable basis for a motor vehicle stop," since the law requires that mufflers be "in good mechanical condition." 2003 VT 3, ¶¶ 4, 6, 175 Vt. 472, 820 A.2d 183 (mem.). Similarly, in *State v Thompson*, we held that police officers were justified in stopping drivers whose cars lacked a

driver-side mirror and a bumper. 175 Vt. 470, 471, 816 A.2d 550, 552 (2002) (mem.). Since cars without those parts would not pass inspection, the police had a reasonable suspicion that the defendants were in violation of the law by operating vehicles without valid inspection certifications. *Id.*; see also *State v Lussier*, 171 Vt. 19, 36, 757 A.2d 1017, 1029 (2000) ("Because defendant's passenger vehicle had only one functioning taillight and thus was not properly equipped [per statute], the arresting officer had a reasonable and articulable basis for stopping the vehicle to issue a citation or merely inform the operator of the problem."). In the present case, although unconvinced that defendant's leftward drift was blameworthy, significant, or indicative of any greater wrongdoing, the court credited the officer's testimony that defendant crossed the center line. This was sufficient to authorize the stop.

¶ 7. The trial court explained that the arresting officer's uncertain testimony as to the time and distance of the violation led to two disparate conclusions: that the stop was based on a momentary crossing of the center line, or that the stop was based on a lengthier and more egregious violation. The court focused on the disparity between these two versions, opining that only the second version described a violation serious enough to raise a suspicion of DUI. Resorting to a "totality of the circumstances" analysis, the court concluded that the State failed to meet its burden to prove a reasonable and articulable suspicion of *criminal* activity to warrant the stop. In so holding, the lower court erred as a matter of law.

¶ 8. It is true that where no traffic violation exists we look to the totality of the circumstances in judging the reasonableness of a DUI stop. See *State v Pratt*, 2007 VT 68, ¶¶ 5-6, 182 Vt. 165, 932 A.2d 1039 (where defendant's car was weaving within his lane, police officer, based on the totality of the circumstances, had suffi-

cient reasonable suspicion of DUI to stop even though no traffic violation occurred). But where the stop is otherwise authorized, law enforcement may briefly detain a vehicle for further inquiry as long as the "police intrusion proceed[s] no further than necessary to effectuate the purpose of the stop." *State v. Sprague*, 2003 VT 20, ¶ 17, 175 Vt. 123, 824 A.2d 539; see also *State v. Theetge*, 171 Vt. 167, 171, 759 A.2d 496, 499 (2000) (reversing suppression decision and remanding for further proceedings where investigation of car parked in highway breakdown lane resulted in DUI charge).

¶ 9. Here, the trial court found that defendant failed, either briefly or at length, to abide by the "drive to the right" statute. The court's inability to determine the length and degree of the violation was immaterial to its initial finding that the officer saw defendant cross the center line. Since the perceived traffic violation constituted a reasonable and articulable basis for the stop, it was error to further scrutinize the violation for additional indicia of DUI or some other criminal offense in order to justify the officer's intervention.

¶ 10. In sum, the trial court found that defendant crossed the center line, and therefore erred as a matter of law in finding the stop unlawful. There is no dispute as to the reasonable suspicion of DUI and DLS arising from facts developed by the police after the initial, and valid, stop. The suppression order is accordingly reversed and the case remanded for additional proceedings.

*Reversed and remanded.*

¶ 11. **Skoglund, J.,** dissenting. The credibility of the officer's testimony lay at the heart of the trial court's decision to suppress evidence from the traffic stop. That much is clear. The majority mischaracterizes the trial court's ruling as an incorrectly applied legal standard instead of recognizing and deferring to

the court's necessary assessment of evidentiary credibility and the resulting findings of fact. Our mandate when reviewing such a question of fact is as clear as Vermont's requirement that motorists remain to the right on the road: we apply the highest level of deference to the trier of fact, recognizing that the lower court is uniquely qualified to determine the credibility of witnesses. *State v. Williams*, 2007 VT 85, ¶ 2, 182 Vt. 578, 933 A.2d 239 (mem.). Because the factual findings logically inferred from the trial court's ruling support its decision to suppress and dismiss, I respectfully dissent.

¶ 12. As we have held:

> When evidence conflicts, the credibility of witnesses, the weight and sufficiency of evidence, and its persuasive effect are matters accorded to the exclusive determination of the trier of fact. If the record contains any credible evidence that fairly and reasonably supports the findings, the trial court's ruling must stand even though inconsistencies or substantial evidence to the contrary may exist.

*MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 22, 175 Vt. 382, 834 A.2d 25 (quotation omitted); see also *State v. Nault*, 2006 VT 42, ¶ 7, 180 Vt. 567, 908 A.2d 408 (mem.) (outlining deferential review of trial court fact-finding in driving-under-the-influence case).

¶ 13. Here, the arresting officer testified he stopped defendant after observing him cross the double yellow lines at the center of the highway. As the court noted, "the officer's testimony as to the distance, as well as the time, the vehicle traveled in this manner varied greatly." According to the officer's testimony, the vehicle traveled while across the center line "as little as five feet and as much as 200 feet." This went on "from as little as a 'few seconds' . . . up to two minutes, without any

explanation [from the officer] as to the reason for such variation." The court specifically noted that "the officer testified that either he did not make a video of the operation or made one and it could not be located." Based on that "greatly" contradictory testimony — the only evidence in the suppression hearing offered by the State — the trial court determined that the State failed to meet its burden to prove the legality of the stop.

¶ 14. The majority correctly notes that even a "technical" traffic violation is legally sufficient to justify an investigatory stop. See *State v. Theetge*, 171 Vt. 167, 170, 759 A.2d 496, 498 (2000) ("[W]hen an officer has a reasonable and articulable suspicion that a traffic violation has occurred, he or she may stop a vehicle to investigate."). The majority then concludes that, as a matter of law, the trial court erred in its determination that the facts did not support the traffic stop. *Ante*, ¶ 10. To do so, however, the majority relies on findings of fact that the trial court did not make. The majority holds that the court found "that the officer 'observed the car cross over the center line of the highway.' " *Ante*, ¶ 3. No, the court did not. The court was relating the testimony it heard from the arresting officer. It did not adopt that testimony as a "finding of fact."

¶ 15. With no video of the traffic stop, the State relied entirely on the officer's conflicting testimony to establish the facts justifying the stop. The trial court indicated that the State's evidence

> lends itself to two disparate conclusions: one, a stop based on an observation of a center line, perhaps partially obscured by sand or snow, being crossed a distance of five feet on a curve, with no oncoming traffic for 3 seconds; or two, a crossing that continued for a distance of 200 feet for as long as two minutes.

However, by merely pondering the two versions of the State's evidence, the trial court did not adopt either, as the majority contends. In fact, the trial court went on to conclude that the State had failed to meet its burden of proof to establish that the traffic stop was justified.

¶ 16. I concede that if the trial court had found that a technical violation occurred, then its decision to suppress the evidence would necessarily amount to the application of an incorrect legal standard, as a technical violation is sufficient for a traffic stop.[2] The question here is whether the State adduced evidence sufficient to demonstrate that a technical violation occurred at all, a finding of fact which lies within the purview of the trial court. Admittedly, the trial court's use of the language "articulable suspicion of criminal activity," and not of a "technical violation," might be interpreted to suggest that the court erroneously required a showing that the officer suspected defendant was intoxicated while driving to justify the stop.[3] But the trial court's ultimate decision to suppress the evi-

---

[2] I would note that driving to the left of center is not, per se, a moving violation. See 23 V.S.A. § 1033(1) (permitting driver to pass another vehicle by driving "left of the center of the highway" when the oncoming lane is clear, and prohibiting a return "to the right side of the roadway until safely clear of the overtaken vehicle"); see also *id.* § 1031(a)(1)-(4) (providing exceptions to Driving to Right law including passing another vehicle or avoiding obstructions in the roadway).

[3] At most, this ambiguity in the trial court's order calls for a remand for clarification or articulation, not a reversal. Cf. *State v. Bertrand*, 2008 VT 127, ¶ 5, 185 Vt. 574, 967 A.2d 1137 (mem.) (holding remand for findings was appropriate remedy when trial court failed to make any factual findings to support bail denial); see also *City of Burlington v. Davis*, 160

dence leads to the obvious conclusion that the officer's testimony was not credible and thus failed to satisfy the State's burden to show that such a violation took place.

¶ 17. The majority misapprehends the issue and gives undue credence to conflicting testimony that the trial court itself considered varying and uncertain and chose to ignore. While the court's decision is confusing in terms of what is properly labeled as a finding of fact, it can only reasonably be understood as a whole and as discrediting the officer's testimony. What is clear is that the trial court found any technical violation that may have occurred so inconsequential and of such insufficient magnitude to warrant a stop that it ultimately reflected poorly on the officer's credibility. By construing the trial judge's recitation of the officer's testimony — and possible conclusions to be drawn from it — as fact, the majority veers uncomfortably outside our established path of review for factual findings. I would affirm the trial court's determination to suppress the evidence from the traffic stop and dismiss the DUI charge flowing from it.

¶ 18. I am authorized to state that Justice Johnson joins in this dissent.