*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NOS. 2014-204 & 2014-229

FEBRUARY TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Robert J. Mongeon | } | DOCKET NOS. 9-1-14 Cncs & |
| | | 100-1-14 Cncr |

Trial Judge: Samuel Hoar, Jr.

In the above-entitled causes, the Clerk will enter:

Defendant appeals the civil suspension of his driver's license and his conviction for driving while under the influence (DUI), arguing that the court erred in denying his motion to suppress. We affirm.

The court found the following facts. On an evening in December 2013, the Colchester Police Department received a call reporting that a person had been seen walking on the Island Line causeway and appeared to be intoxicated and underdressed for the weather. Two police officers, who were both in uniform and armed, were dispatched to the area in separate cruisers to investigate. When the first officer arrived at the parking area closest to the bike path, he observed a single vehicle—defendant's—in the lot with its lights on and engine running, and parked facing out. The officer pulled his vehicle in next to the parked vehicle. The second officer also arrived and parked closer to the exit of the parking lot in a position that allowed other vehicles to pass around to enter or exit. The second officer headed toward the bike path.

The first officer approached defendant's vehicle, tapped on the driver's window and asked defendant to roll down the window. He engaged in conversation with defendant to determine if defendant was the individual of concern or had information regarding the individual. During the conversation, the officer observed that defendant's speech was slurred, his eyes were watery, and there was an odor of intoxicants. When asked, defendant admitted drinking, and stated he was planning to go home in twenty minutes. The officer then asked defendant to exit the vehicle to perform field sobriety tests. The results of the tests led to defendant's arrest for DUI.

Defendant filed a motion to suppress, arguing that he was illegally seized when the officer approached his vehicle in the parking lot. The trial court concluded that the conversation between defendant and the officer was a casual encounter, not a seizure, and, even if there was a seizure, it was justified under the community caretaking doctrine. Defendant appeals.

On appeal from a motion to suppress, we give deference to the trial court's underlying findings of fact, but review the court's legal conclusions de novo. State v. Lawrence, 2003 VT 68, ¶ 8, 175 Vt. 600 (mem.).

The legal question presented in this case is whether defendant was seized when he was approached in the parking lot. A police officer may approach and question a citizen without conducting a seizure. State v. Pitts, 2009 VT 51, ¶ 7, 186 Vt. 71 ("Both the United States Supreme Court and this Court have recognized that a seizure does not occur when an officer merely approaches an individual and asks certain questions, and therefore no minimal level of suspicion of wrongdoing is necessary."). Similarly, officers may approach and question a person seated in a parked vehicle without necessarily conducting a seizure. State v. Burgess, 163 Vt. 259, 261 (1995). "The question in determining whether an encounter between a citizen and police constitutes a seizure is whether, given all of the circumstances, the encounter is so intimidating that a reasonable person would not feel free to leave without responding to the officer's requests." State v. Jestice, 2004 VT 65, ¶ 5, 177 Vt. 513 (mem.); see Pitts, 2009 VT 51, ¶ 8 (explaining that determining whether seizure has occurred involves objective inquiry and depends on particular facts of encounter). This test focuses on the "interaction as a whole." Jestice, 2004 VT 65, ¶ 5.

Here, the court found that the encounter between defendant and the officer was not a seizure because there was not a show of authority so intimidating that "a reasonable person would not have felt free to leave without responding." The court emphasized that although the officer was wearing his uniform and carrying a weapon and flashlight, he did not brandish the weapon or impose authority over defendant. Further, his cruiser was parked next to defendant's vehicle, allowing defendant easy and uninhibited opportunity to exit from the parking lot.

Defendant contends that the court's analysis was erroneous because the court placed improper emphasis on whether the police cruiser blocked defendant's exit. Defendant points to the following facts as indicative of a seizure: two uniformed, armed officers in marked police cruisers entered the parking lot; the lot was small and in a remote location; it was dark and cold; the police cars parked next to defendant and near the exit; and the first officer shone a flashlight into defendant's vehicle, knocked on the window and instructed defendant to roll down his window.

We conclude that these facts demonstrate the initial encounter between defendant and the officer was a casual encounter and not a seizure. The officer parked his car next to defendant's vehicle without blocking defendant's exit. Further, the officer casually approached the vehicle and gestured for defendant to roll down his window. Although he was in uniform and armed, he did not brandish a weapon or make an outward show of force. He engaged defendant in a nonconfrontational conversation regarding whether defendant had seen someone in distress; he did not question defendant about criminal conduct. Cf. Pitts, 2009 VT 51, ¶ 9 (explaining that "pointed questions about drug possession or other illegal activity" may convert consensual encounter into seizure). Further, although he and his cruiser were nearby, the second officer did not approach defendant, and his cruiser did not block defendant's vehicle. A reasonable person in these circumstances would not have felt compelled to comply or to conclude he was not free to leave. Id. ¶ 8.

The facts here are distinguishable from Jestice. In that case, a uniformed officer in a cruiser encountered a couple sitting in a stopped car at a trailhead parking lot. The officer pulled his cruiser "nose-to-nose" with the car, shining the headlights into the car and essentially

2

blocking the exit. He then approached the car and questioned the couple about what they were doing. This Court concluded that it was a "close question," but there was a seizure because the police exhibited a show of authority by parking in front of the couple's car, shining the cruiser lights inside and blocking the exit. 2004 VT 65, ¶ 6. In contrast, here, the exit was not blocked by the officer's cruiser, and the officer did not shine his car lights into defendant's vehicle. Contrary to defendant's contention that too much emphasis is placed on whether the exit was blocked, we do not rely solely on this fact in determining that no seizure occurred, but it is a critical distinction between this case and Jestice.

Defendant argues that two of the court's findings are not supported by the evidence and these findings are critical to the determination of whether a seizure occurred.[*] We affirm the court's findings "unless they are clearly erroneous" and give the court "great discretion in making factual findings because it is in the best position to assess the credibility of witnesses and the weight to be given to evidence." State v. Young, 2010 VT 97, ¶ 23, 189 Vt. 37. First, defendant claims that the evidence does not support the court's finding that the officer "asked" defendant to roll down the window; rather, defendant claims the evidence shows that the officer "instructed" defendant. During his testimony, the officer explained that when he approached the vehicle, the driver shut the engine off and the officer spoke with defendant. On cross examination, the officer elaborated that he approached the vehicle, tapped on the window with his hand, and motioned to roll down the window. Defense counsel asked, "So you instructed him to roll down the window?" The officer responded, "Yes."

The court did not err in stating that the officer "asked" defendant to open the window. Although the officer agreed that he "instructed" defendant to roll down the window, his testimony revealed that the instruction was made through a tapping on the window and a hand motion. It was entirely within the court's province as factfinder to describe this gesture as an "ask" rather than an "instruction."

Further, we conclude that the distinction defendant seeks to make does not affect our legal conclusion that there was no seizure. Essentially, defendant argues that an instruction amounts to a command and therefore a seizure. Even accepting that the officer "instructed" defendant to open the window, we cannot conclude that the trial judge had to find that the officer issued a command. Defendant bore the burden of proving that the officer commanded him to open the window. State v. Nault, 2006 VT 42, ¶ 16, 180 Vt. 567 (mem.). He failed to meet that burden. The fact that the officer agreed that he "instructed" defendant to open the window by tapping on the window and gesturing with his hand did not require the court to find that he commanded defendant to open the window. Again, we emphasize that there was no use of force, display of a weapon, threats or blocking of exits to otherwise indicate that compliance with the request was required. See id. (listing factors used to determine if words amounted to command); see also State v. Sprague, 2003 VT 20, ¶ 26, 175 Vt. 123 (explaining that determining whether request is coercive depends on whether message is conveyed that compliance is required).

Defendant also argues that the court misrepresented where the second officer was during the first officer's encounter with defendant and that this is important to show that the encounter was a seizure because there were multiple officers involved. The court found that the second

---

[*] Defendant also argues that the court made an oral finding at the hearing that there was a degree of restraint, and this is inconsistent with the court's written decision. There was no error insofar as the court did not make oral findings at the hearing. To the extent the court used the word "restraint" it was in questioning counsel regarding their legal arguments.

officer arrived around the same time as the first officer, parked near the exit and "then exited his cruiser and headed to the bike path, while [the first officer] interacted with defendant." Defendant argues that this is contrary to the evidence, which he claims showed that the second officer was sitting in his vehicle and did not depart for the bike path until after the first officer communicated with defendant. The testimony supports the court's recitation of the facts. The first officer testified that while he was interacting with defendant the second officer parked and went towards the bike path. He additionally explained, "I got out of the vehicle first, interacted with [defendant], and we had determined that he may possibly not be this person that was distressed and walking on the bike path, so [the second officer] began walking down the bike path." This testimony is somewhat unclear as the timing of when the second officer began walking on the bike path but could certainly support the trial court's assessment that the second officer parked, then exited his cruiser and headed to the bike path while the first officer communicated with defendant.

Further, even if we accept defendant's portrayal of the facts that the second officer was sitting in his vehicle while the first officer spoke to defendant, this would not impact our analysis of whether a seizure occurred. It is the "threatening presence of several officers," United States v. Mendenhall, 446 U.S. 544, 554 (1980), that may create a circumstance indicative of a seizure, and here, under no set of facts did the second officer contribute to a threatening presence. At most, he was seated in his cruiser in the parking lot. His cruiser was not close to defendant's vehicle and did not obstruct the exit from the parking lot. Further, the second officer neither approached defendant nor interacted with him. Therefore, we conclude there was no seizure.

Because we conclude that no seizure occurred, we do not address the parties' arguments concerning the applicability of the community-caretaking doctrine.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4