## State of Vermont v. Eugene M. Theetge

[759 A.2d 496]

No. 99-367

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed July 14, 2000

Motion for Reargument Denied August 21, 2000

*Robert L. Sand*, Windsor County State's Attorney, White River Junction, for Plaintiff-Appellant.

*Robert Appel*, Defender General, and *Anna Saxman*, Appellate Attorney, Montpelier, for Defendant-Appellee.

**Amestoy, C.J.** In this driving while intoxicated (DWI) case, the State has filed an interlocutory appeal from a Windsor District Court

decision granting defendant Eugene Theetge's motion to suppress evidence obtained from a seizure. The State argues that a seizure did not occur, or, in the alternative, if a seizure did occur, the officer's actions were lawful. We reverse.

On March 2, 1999, at 11:30 p.m., Vermont State Police Trooper Timothy Clouatre observed defendant's stopped vehicle in the southbound breakdown lane of Interstate 91 in Hartland. The officer pulled his cruiser into the breakdown lane behind defendant's vehicle and activated the cruiser's blue lights and spotlight. The officer exited his vehicle and approached defendant's vehicle with a flashlight in one hand and his drawn weapon in the other. Trooper Clouatre's first exchange with defendant was to request his license and registration as well as ordering defendant to keep his hands visible. The officer then verified that defendant was not in need of assistance. Trooper Clouatre observed that defendant's eyes were watery and bloodshot, his speech was slurred and mumbled, and his breath strongly smelled of alcohol. He also noticed alcoholic beverages in the back seat. Suspecting that defendant was under the influence of alcohol, he informed defendant to "hang tight" while he went back to his cruiser to process defendant's information. Additionally, Trooper Clouatre requested the assistance of another officer.

When another officer arrived, approximately twelve minutes later, Trooper Clouatre explained that he observed defendant's vehicle initially stopped in the breakdown lane and investigated for that reason. With the other officer watching the passenger, Trooper Clouatre conducted a series of standard tests which tended to show that defendant was intoxicated. Consequently, the State charged defendant with DWI, in violation of 23 V.S.A. § 1201.

Prior to trial, defendant moved to suppress all evidence in the case, arguing that the officer had illegally seized him. The trial court held a hearing, at which the State called Trooper Clouatre as its sole witness. Further, the State introduced and played portions of a videotape from a dashboard-mounted camera that had been activated when the officer pulled his cruiser into the breakdown lane behind defendant's vehicle. On cross-examination, the officer testified that defendant was not free to leave and that, had defendant attempted to leave, the officer would have pursued him.

In its written decision, the court concluded that the officer had seized defendant, but that he had no reasonable and articulable suspicion that defendant was engaged in unlawful activity. The court also rejected the State's argument that the stop constituted an

exception to the reasonable and articulable suspicion requirement under the "community caretaking" doctrine, concluding that Trooper Clouatre's initial request for defendant's license and registration before inquiring whether there was an emergency precluded applying the exception. Having found neither a reasonable and articulable suspicion nor a community caretaking exception to justify the seizure, the court granted defendant's suppression motion. The State filed this interlocutory appeal.

## I.

The State first argues that the use of the cruiser's blue lights, when pulling behind a vehicle already parked in the breakdown lane of the interstate, does not create a seizure. In doing so, it invites us to overrule our decision in *State v. Burgess*, 163 Vt. 259, 261, 657 A.2d 202, 203 (1995), where we held that the displaying of a cruiser's blue lights after pulling behind a stopped vehicle in a lawful pull-off area constituted a seizure that required a reasonable and articulable suspicion. We decline to revisit *Burgess*, because it is clear that the officer's conduct here "'would signal to a reasonable person that the officer is attempting to seize the person for investigative purposes.'" *Id.* at 263, 657 A.2d at 204 (Dooley, J., dissenting) (quoting *State v. Hanson*, 504 N.W. 2d 219, 220 (Minn. 1993)); *State v. Tongue*, 170 Vt. 409, 414, 753 A.2d 356, 359 (2000) (when police officer merely approaches and questions person in parked vehicle, no seizure has occurred; test is whether officer has done anything to inhibit person's freedom of movement) (citing *Burgess*, 163 Vt. at 261, 657 A.2d at 203).

Beyond activating his blue lights and spotlight, the officer approached defendant's vehicle with his weapon drawn — though it is unclear whether defendant knew of this fact — and requested defendant's license and registration. After obtaining these documents, he specifically ordered defendant to "hang tight" while he processed defendant's information in his cruiser. Upon this show of authority, we believe that a reasonable person in defendant's position would objectively believe he was not free to leave the scene. See *id.* at 261-62, 657 A.2d at 203.[1] Thus, the trial court correctly concluded that a seizure had occurred.

---

[1] Trooper Clouatre's testimony that defendant was not free to leave and that had defendant attempted to leave, the officer would have pursued him, is not dispositive of this issue. The test is not the police officer's subjective intentions, but rather the objective belief of a reasonable person in the position of the defendant. See *Burgess*,

## II.

The conclusion that a seizure occurred does not end our inquiry. The State contends that if a seizure did take place, it was justified.[2] We agree.

The threshold issue is "whether the officer had reasonable grounds to suspect that defendant was engaged in any wrongdoing at the time of the encounter." *State v. Sutphin*, 159 Vt. 9, 11, 614 A.2d 792, 793 (1992); see also *State v. Marcello*, 157 Vt. 657, 657-58, 599 A.2d 357, 358 (1991) (mem.) ("Generally, the Fourth Amendment to the United States Constitution and Chapter I, Article 11, of the Vermont Constitution require that police officers have reasonable and articulable suspicion that someone is engaged in criminal activity, or is violating a motor vehicle law, before conducting an investigatory stop."). Thus, when an officer has a reasonable and articulable suspicion that a traffic violation has occurred, he or she may stop a vehicle to investigate.

Traffic Committee Regulation 1.7(A), promulgated pursuant to the authority of 23 V.S.A. § 1004, states in pertinent part: "No parking, standing or stopping is permitted on limited access highways, except in areas designated or in cases of emergency." It cannot be disputed that TCR 1.7(A) applies to the facts of this case as the State presents them. I-91 is clearly a limited access highway, and defendant was not in a designated area where parking, standing, or stopping is allowed.

In granting defendant's motion to suppress, the trial court concluded that the officer could not have had reasonable suspicion of criminal activity without first asking defendant the reason for stopping in the breakdown lane. Apparently, the court reasoned that because stopping on limited access highways is not a violation in "cases of emergency," a law enforcement officer does not have a

---

163 Vt. at 261-62, 657 A.2d at 203. Nevertheless, while Trooper Clouatre's subjective intent is not determinative, it is additional evidence that informs and supports the conclusion that defendant did not reasonably feel free to leave the scene.

[2] In response to defendant's motion to suppress and in its briefing to this Court, the State argued that a seizure was justified under the community caretaking doctrine. See *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (mem.) (allowing officers to stop a vehicle without reasonable suspicion in some circumstances because police have essential role as public servants to "'assist those in distress and to maintain and foster public safety'") (quoting *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989)). At oral argument, however, the State asserted that it is unnecessary to apply the community caretaking doctrine because the officer had a reasonable and articulable suspicion that defendant was violating a motor vehicle law.

reasonable suspicion unless he first determines that there is no "plausible reason for stopping in the breakdown lane."[3]

We believe that the trial court — perhaps confused by the State's reliance at the suppression hearing on the community caretaking doctrine — erroneously determined that the officer was required to first ask defendant whether the stop was because of an emergency. Unlike *Marcello*, here the officer had a reasonable and articulable suspicion that defendant was violating a motor vehicle law. The instant case is also factually distinguishable from *Burgess*, where we expressly noted that the "defendant's vehicle was *lawfully parked* in a pull-off on the side of the road." *Burgess*, 163 Vt. at 262, 657 A.2d at 204 (emphasis added). The officer in *Burgess* had no indication anything was wrong. See *id.* Here, only one of two possible scenarios could be true: either (1) there was an emergency justifying defendant's vehicle's presence in the breakdown lane, or (2) defendant was violating TCR 1.7(A). Either scenario was sufficient to establish a reasonable and articulable suspicion for the officer's seizure of defendant; the former under the community caretaking doctrine and the latter under the traffic violation doctrine. Accordingly, we reverse the trial court's decision granting defendant's motion to suppress and remand this matter for further proceedings.

*Reversed and remanded.*

---

[3]We note that parking, standing, or stopping is permitted only "in cases of emergency" under TCR 1.7(A). Defendant's passenger testified at the suppression hearing that defendant had stopped so that defendant and passenger could remove their jackets.