# State of Vermont v. Adam Pierce

[787 A.2d 1284]

No. 01-100

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 16, 2001

*Robert DiBartolo*, Orange County Deputy State's Attorney, Chelsea, for Plaintiff-Appellee.

*George Ostler* and *Christopher A. Dall* of *DesMeules, Olmstead & Ostler*, Norwich, for Defendant-Appellant.

**Dooley, J.** Defendant, Adam Pierce, appeals from the trial court's denial of his motion to suppress evidence obtained by a state police officer when he stopped defendant's vehicle. On appeal, defendant argues that it was a violation of the Fourth Amendment to the United States Constitution and of Chapter I, Article 11 of the

Vermont Constitution* for a police officer to stop defendant in his automobile and question him as a witness to another person's driving under the influence of intoxicating liquor (DUI). We affirm.

After midnight, a state police officer who had just exited from the south lane of Interstate 91 observed a Saab automobile backing down Route 113 towards the off-ramp of the north lane of the interstate. The Saab came to a stop side-by-side to defendant's Honda automobile, which was stopped at the intersection of the off-ramp and Route 113. The officer pulled his police cruiser up to the two cars, shining his headlights on both of them. He approached the Saab to question its driver and noticed that she smelled of alcohol. At this time, defendant started to drive away. The officer motioned defendant to stop and said "hold on a second, I want to talk to you." The officer approached defendant to question him about the possible DUI of the Saab driver. He determined that defendant also smelled of alcohol.

Eventually, the officer processed both drivers for suspected DUI, and, as a result of the blood alcohol test he administered, charged defendant. In district court defendant argued that he had been seized unlawfully and moved to suppress all evidence obtained in connection with his stop. The court denied his motion. We review motions to suppress de novo. *State v. Graves*, 170 Vt. 646, 646, 757 A.2d 462, 463 (2000) (mem.).

The district court's ruling was as follows:

> The officer was confronted with a situation where, in the wee hours of the morning, he personally observed a vehicle, namely the Saab, backing the wrong way on an exit ramp. He had good reason to investigate at that point in time and find out what was going on. By the time he got to where the Saab was located, it was side-by-side with the defendant's vehicle. The defendant at that point was a witness . . . . But what they did do is they interviewed a witness at the scene of the erratic behavior after they had determined that the operator of the vehicle that was being operated in an erratic fashion had been drinking. It's routine for officers investigating an offense to ask people at the scene what they saw, what they know. And the request to speak with the defendant,

---

* Defendant has cited Article 11, but has offered no reason why the result under Article 11 should be different from that under the Fourth Amendment. Accordingly, we have not separately considered the Article 11 claim.

conceivably about what he saw or what he knew, is a perfectly legitimate investigative function. What went wrong from the defendant's perspective is when the officer started speaking to him, he then smelled alcohol on the defendant, and that led to the chain of events resulting in the processing. But I think under the chain of events portrayed here, the officer had every right to speak with the defendant and determine what he knew, if anything, about what was going on with the operator of the Saab vehicle.

After making that ruling and in response to a specific request by defendant, the court went on to rule that the officer had not seized defendant for purposes of the Fourth Amendment.

On appeal, defendant argues that the officer's conduct constituted a seizure under the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution and that seizure was unlawful because the officer did not have a reasonable and articulable suspicion that defendant himself had committed or was about to commit any crime.

■ We agree that the officer's conduct constituted a seizure. Normally a seizure occurs when, under the totality of the circumstances, a reasonable person would not believe he was at liberty to leave or to decline to answer the officer's questions. See *State v. Lancto*, 155 Vt. 168, 171, 582 A.2d 448, 449 (1990); see also *State v. Theetge*, 171 Vt. 167, 169, 759 A.2d 496, 498 (2000) (quoting *State v. Burgess*, 163 Vt. 259, 263, 657 A.2d 202, 204 (1995) (Dooley, J., dissenting)) (seizure occurs when the officer's conduct "would signal to a reasonable person that the officer is attempting to seize the person for investigative purposes"). In this case, the officer signaled defendant to stop his vehicle after defendant had already begun to drive away. Even though he had not activated the cruiser's blue lights, the officer did tell the defendant verbally and by gesturing that he was not free to leave. Furthermore, the officer's headlights were pointed directly at defendant and the driver of the Saab. These facts are sufficient to constitute a seizure of defendant. See *Burgess*, 163 Vt. at 261, 657 A.2d at 203 ("[A] show of authority tending to inhibit a suspect's departure from the scene is sufficient to constitute a stop . . . .").

The conclusion that a seizure occurred does not end our inquiry. *Theetge*, 171 Vt. at 170, 759 A.2d at 498. The Fourth Amendment

prohibits only unreasonable seizures. See *State v. Gray*, 150 Vt. 184, 191, 552 A.2d 1190, 1194-95 (1988). We have recognized that a brief seizure is justified if the officer has a reasonable and articulable suspicion that the defendant is engaged in criminal activity. *Theetge*, 171 Vt. at 170, 759 A.2d at 498. This does not mean, however, that suspicion of criminal conduct is the only possible justification for a seizure. Indeed, we have recognized in other contexts that a seizure can be reasonable even in the absence of such suspicion. See *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (officer acting pursuant to community caretaking function); *State v. Martin*, 145 Vt. 562, 568, 496 A.2d 442, 446 (1985) (DUI roadblock).

■ The State argues, and the district court held, that it was reasonable, and consistent with the Fourth Amendment, for an officer to question a witness to a crime. Although we have not had the occasion to address this issue, the few decisions from other jurisdictions that are based on facts similar to those before us agree with this position. See generally 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.2(b), at 25-26 (3d ed. 1996). The question of whether a seizure is reasonable involves a weighing of the public interest served by the seizure against the degree of intrusion into personal privacy caused by the seizure. *State v. Martin*, 145 Vt. at 568, 496 A.2d at 446-47. We agree that under some circumstances the balance tips in favor of allowing law enforcement officers to briefly stop a potential witness to a crime to obtain information even though the witness is not suspected of criminal conduct.

We stress, as we did with respect to DUI roadblocks first in *State v. Martin* and then in *State v. Record*, 150 Vt. 84, 548 A.2d 422 (1988), that this is not an issue that lends itself to per se rules. We must judge each situation individually while attempting to set forth factors or criteria to be considered. See *Martin*, 145 Vt. at 571, 496 A.2d at 448; *Record*, 150 Vt. at 87, 548 A.2d at 424-25. LaFave suggests we draw criteria from § 110.2 of the American Law Institute, Model Code of Pre-Arraignment Procedure (1975), an approach recently adopted in *People v. Hernandez*, 679 N.Y.S.2d 790, 794 (Sup. Ct. 1998). As suggested by LaFave, the Model Code authorization of seizure of witnesses is narrower than the authorization of seizure of those suspected of committing a crime. See 4 W. LaFave, *supra*, § 9.2(b), at 24. It allows seizure by "an officer coming on the scene of a recently committed crime to 'freeze' the situation and obtain

identification and an account of the circumstances from the persons present." American Law Institute, Model Code of Pre-Arraignment Procedure § 110.2, Note, at 9.

The Model Code provides that an officer may order a potential witness to remain in the officer's presence for a reasonable period to answer questions when three criteria are met:

> (i) [t]he officer has reasonable cause to believe that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of or danger to property, has just been committed near the place where he finds such person, and
>
> (ii) the officer has reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and
>
> (iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime.

*Id.* § 110.2(1)(b), at 5-6. *People v. Hernandez* is a good example of a court applying the Model Code criteria to resolve whether a seizure met the requirements of the Fourth Amendment. In *Hernandez,* an officer stopped a truck, matching the description of a vehicle which witnesses reported contained other witnesses and/or victims of a shooting. The officer had no names of the occupants of the truck and stopped it within ten minutes of the crime. The truck contained two passengers, including defendant, as well as a gun and a quantity of cocaine. The court found that each of the three criteria set out in § 110.2(1)(b) were met and concluded that the seizure of the truck was lawful. *Id.* at 795.

We recognize that § 110.2(1)(b) of the Model Code has not been adopted as statutory law in Vermont. We find, however, that the criteria employed in the section are useful in striking the proper balance to determine the lawfulness of the seizure of a witness. Accordingly, we apply the criteria in this case.

Looking at the first criterion, we believe that DUI is an offense that involves a danger of "forcible injury to persons." See *State v. Boyea,* 171 Vt. 401, 409, 765 A.2d 862, 867 (2000) (DUI driver "is not at all unlike a 'bomb,' and a mobile one at that"); *State v. Lamb,* 168 Vt. 194, 199, 720 A.2d 1101, 1104 (1998) ("The alleged offense here, driving while intoxicated, presented a substantial and immediate risk

of death or serious injury to both the driver and anyone unlucky enough to get in his way."); *Record*, 150 Vt. at 89, 548 A.2d at 426; *Martin*, 145 Vt. at 569, 496 A.2d at 447 ("The problem of drunk drivers has long been, and continues to be, a serious threat to public safety."). In this case, the possible DUI was accompanied by driving that appeared to violate rules of the road. See 23 V.S.A. §§ 1101(a) (person shall not leave standing a vehicle, attended or unattended, upon the "main-traveled part of the highway"); 1113(a) (unsafe backing prohibited). Based on his observation of her erratic driving and her signs of intoxication, the officer had reasonable cause to believe that the operator of the Saab automobile was driving under the influence of intoxicating liquor.

Similarly, the circumstances met the second criterion. Defendant had the perfect vantage point from which to observe the erratic operation of the Saab. It was reasonable to believe that defendant and the driver of the Saab knew each other so that defendant would have knowledge of whether the Saab driver had consumed alcoholic beverages. The officer testified that he stopped defendant to obtain information about the Saab driver. Thus, we conclude that the officer had reasonable cause to believe that defendant had knowledge of material aid in the investigation of whether the Saab driver was driving under the influence.

Finally, we conclude that the third criterion was met. Perhaps, this is the closest question in examining the criteria because in most cases the officer will be able eventually to identify the driver and other occupants of a vehicle through the license number. Nevertheless, the license number will not always allow identification of the occupants of a vehicle, and a very brief stop will produce that identification. Moreover, the operator, in this case defendant, was a resident of a different state, and it may not be as easy for the officer to obtain information in another jurisdiction. Finally, a fresh witness account was desirable because the officer had to make immediate decisions about how to handle the situation before him, and he had not yet been able to administer any roadside tests to the Saab operator that might confirm or undermine his initial impression of her sobriety.

On this criterion, we emphasize that we are looking only at the justification for initial communication with the potential witness, a very limited interference with the witness's privacy and freedom of movement, because defendant's intoxication became apparent immediately. It may be that the circumstances would not have

supported an extended stop or a detailed inquiry. We leave that question to another day.

■ We conclude that the brief seizure of defendant and his vehicle was reasonable in the circumstances of this case in order to enable the officer to identify, and briefly question, a likely witness to a DUI. The district court properly refused to suppress the evidence of defendant's intoxication.

*Affirmed.*