2011 ME 85

**STATE of Maine**

v.

**Ronald A. LaPLANTE.**

Supreme Judicial Court of Maine.

Argued: June 15, 2011.
Decided: Aug. 2, 2011.

Jeffrey C. Toothaker, Esq., Toothaker & Chong, Ellsworth, ME, Zachary Heiden, Esq. (orally), Maine Civil Liberties Union, Portland, ME, for Ronald LaPlante.

William M. Entwisle, Asst. Dist. Atty. (orally), Prosecutorial District VII, Ellsworth, ME, for State of Maine.

Walter F. McKee, Esq., Maine Association of Criminal Defense Lawyers, Freeport, ME, for amicus curiae Maine Association of Criminal Defense Lawyers.

Zachary Heiden, Esq., Maine Civil Liberties Union, Portland, ME, for amicus curiae Maine Civil Liberties Union.

William J. Schnieder, Attorney General, Donald W. Macomber, Asst. Atty. Gen., Augusta, ME, for amicus curiae Attorney General.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] In this appeal, we consider the constitutionality of a state trooper's stop of a vehicle for the sole purpose of seeking information from the operator concerning another vehicle that the trooper observed speeding. This issue arises from Ronald A. LaPlante's conviction of operating under the influence (Class C), 29–A M.R.S. § 2411(1–A)(C)(3) (2010), entered in the Superior Court (Hancock County, *Cuddy, J.*) after his conditional guilty plea. LaPlante contends that the court (*Hunter, J.*) erred when it denied his motion to suppress because the information-seeking stop that led to his arrest was an unreasonable seizure of his person. We conclude that a law enforcement officer's investigation of a third party's civil speeding offense cannot, standing alone, justify the stop and seizure of a motorist, and we vacate the judgment.

## I. BACKGROUND

[¶ 2] The facts are not disputed. On September 1, 2007, Elmer Farren, a trooper with the Maine State Police, was patrolling in his marked cruiser on Route 179 in Hancock County. While on patrol, the trooper clocked by radar a red Pontiac automobile traveling seventy-one miles per hour in a forty-five-mile-per-hour zone. As the trooper was making a turn to pursue the car, a motorcycle passed him.

[¶ 3] The trooper lost sight of the car, and after traveling a brief distance, arrived at a fork where Route 179 intersects Route 180. He continued along Route 179 but did not see the Pontiac, so he drove back to the fork. On Route 180, the trooper still did not see the Pontiac, but he did come upon the motorcycle. The trooper stopped the motorcyclist "to take a chance that maybe the motorcycle operator had seen where this vehicle might have turned." He activated his blue lights and stopped the motorcycle, which was being operated by LaPlante, for the sole purpose of asking about the direction of the Pontiac. LaPlante had not been speeding or noticeably breaking any laws, and his motorcycle did not demonstrate any vehicular defects that might justify a safety-related stop.

[¶ 4] LaPlante was able to identify where the Pontiac had turned. While they spoke, the trooper noticed that LaPlante seemed "a little bit unstable on his feet" and "his speech seemed to be thick." The trooper surmised that LaPlante might have been drinking. He requested LaPlante's license and redirected his efforts to investigating LaPlante for operating under the influence.

[¶ 5] LaPlante was charged with criminal operating under the influence (Class C), 29–A M.R.S. § 2411(1–A)(C)(3). LaPlante moved to suppress the evidence obtained during his vehicle stop, but the court denied the motion. Upon his entry of a conditional guilty plea, because of his existing driving record, LaPlante was sentenced to two years of imprisonment, with all but sixty days suspended, and two years of probation.[1]

## II. DISCUSSION

[¶ 6] LaPlante contends that the stop violated the constitutional proscription against unreasonable searches and seizures because a third party's civil speeding offense is not sufficiently serious to justify an information-seeking seizure of a motorist. Conversely, the State contends that LaPlante's stop was constitutionally permissible because the public interest in addressing speeding outweighs the minimal interference with a motorist's liberty interest that results from a brief stop. Because the facts are not disputed, we review the denial of the motion to suppress de novo as to issues of law. *State v. McDonald*, 2010 ME 102, ¶ 5, 6 A.3d 283, 285.

[¶ 7] The question presented is whether evidence obtained from an information-seeking stop of a single vehicle, made in the absence of any reasonable articulable suspicion, for the sole purpose of investigating a third party's civil speeding infraction, can be used in a criminal proceeding against the person who has been stopped. To answer this question, we (A) address the constitutional significance of a traffic stop; (B) analyze LaPlante's stop in light of the three factors articulated in *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); and (C) state our conclusion.

### A. The Constitutional Significance of a Traffic Stop

[¶ 8] A traffic stop of a motorist by a law enforcement officer is a seizure for purposes of the Fourth Amendment of the United States Constitution and article I, section 5, of the Maine Constitution. *Illinois v. Lidster*, 540 U.S. 419, 425–26, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004); *State v. Hutchinson*, 2009 ME 44, ¶ 18 n.

---

1. The suspended term of sentence was reflected in the judgment and commitment form, but not in the court's docket.

9, 969 A.2d 923, 928; *State v. Brewer*, 1999 ME 58, ¶ 12, 727 A.2d 352, 355. A seizure is unlawful if it is unreasonable. U.S. Const. amend. IV; Me. Const. art. I, § 5. In almost all circumstances, a warrantless seizure is unreasonable in the absence of an objectively reasonable, articulable suspicion "that criminal conduct has taken place, is occurring, or imminently will occur." [2] *State v. Donatelli*, 2010 ME 43, ¶ 11, 995 A.2d 238, 241 (quotation marks omitted). However, the Supreme Court recognized in *Brown* that even in the absence of reasonable articulable suspicion, a seizure for information-seeking purposes may be reasonable if "the gravity of the public concerns served by the seizure [and] the degree to which the seizure advances the public interest" outweigh "the severity of the interference with individual liberty." 443 U.S. at 50–51, 99 S.Ct. 2637.

[¶ 9] Courts have applied the three-factor balancing test articulated in *Brown* to uphold the constitutionality of traffic stops in the absence of reasonable articulable suspicion. For example, in *Lidster*, a highway roadblock stop was deemed constitutionally sound in the absence of reasonable articulable suspicion when law enforcement conducted the roadblock to identify possible witnesses to a fatal hit-and-run accident, the roadblock was in the vicinity of where the accident occurred, and the officers stopped every approaching vehicle for only a brief time. 540 U.S. at 422, 427, 124 S.Ct. 885. We thus examine the reasonableness of the trooper's stop of LaPlante by evaluating (1) the gravity of the public concern in addressing a civil speeding infraction; (2) the degree to which the seizure of a motorist advances a speeding investigation; and (3) the severity of the interference with a motorist's

---

constitutionally-protected liberty interest when that motorist is stopped for questioning by law enforcement.

B.  Application of the *Brown v. Texas* Factors

1.  The Gravity of the Public Concern in Addressing a Civil Speeding Infraction

■ [¶ 10] The requirement that searches and seizures be reasonable "reflects the Framers' recognition 'that searches and seizures were too valuable to law enforcement to prohibit them entirely' but that 'they should be slowed down.'" Thomas K. Clancy, *The Fourth Amendment: Its History and Interpretation* § 11.1 at 466 (2008) (quoting *Berger v. New York*, 388 U.S. 41, 75, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (Black, J., dissenting)). Accordingly, when the State points to a public concern to justify the reasonableness of a search or seizure, courts must consider the gravity of that public concern in the context of the constitutionally-protected right to be free from unreasonable searches and seizures. *See Brown*, 443 U.S. at 50–51, 99 S.Ct. 2637.

[¶ 11] As noted above, the investigation of serious crimes has been deemed sufficiently important to outweigh certain interferences with the liberty interests of stopped motorists. For example, we concluded that the public concern in the investigation of a recently-committed burglary was sufficiently grave to outweigh the interference with a motorist's liberty interest when the motorist was stopped briefly at a roadblock for questioning about the burglary. *State v. Gorneault*, 2007 ME 49, ¶¶ 2, 9, 918 A.2d 1207, 1208, 1209. Our reasoning in *Gorneault* mirrored the Su-

---

**2.**  Safety reasons may also justify a warrantless seizure in the absence of reasonable articulable suspicion of criminal activity. *See*

*State v. Pinkham*, 565 A.2d 318, 319–20 (Me. 1989).

preme Court's approach in *Lidster*, in which the public concern related to the investigation of a fatal hit-and-run accident was sufficiently grave to outweigh the interference with a motorist's liberty interest when he was stopped at a roadblock for questioning about the accident. 540 U.S. at 422, 427, 124 S.Ct. 885. Similarly, other courts have concluded that the investigation of serious crimes can be deemed sufficiently urgent and important to justify warrantless seizures of motorists in the absence of reasonable articulable suspicion, including investigations of a robbery, *see Gipson v. State*, 268 S.W.3d 185, 188–89 (Tex.App.2008), an armed robbery, *see Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935, 936, 937 (1982), and the repeated discharge of a firearm, threatening personal injury, *see Williamson v. United States*, 607 A.2d 471, 477 (D.C.1992).

■ [¶ 12] In contrast, the investigation of noncriminal offenses is generally not a sufficiently grave public concern to outweigh the interference with a motorist's liberty interest that occurs when the motorist is stopped without any reasonable articulable suspicion.[3] *See, e.g., State v. Ryland*, 241 Neb. 74, 486 N.W.2d 210, 213–14 (1992).

[¶ 13] In this case, the trooper was investigating a noncriminal speeding offense.[4] In contrast with the burglary investigation considered in *Gorneault* or the serious crimes considered in *Gipson, Baxter*, and *Williamson*, the civil speeding infraction that led the trooper to stop La-Plante did not present a matter of grave public concern.

2. The Degree to Which the Stop of a Motorist Advances a Speeding Investigation

[¶ 14] Courts have recognized that motorist stops may significantly advance the investigation of serious crimes in cases where motorists are stopped soon after the crime and in the vicinity where the crime occurred because the stopped motorists "might well have been in the vicinity of the crime at the time it occurred." *Lidster*, 540 U.S. at 427, 124 S.Ct. 885; *see also Gorneault*, 2007 ME 49, ¶¶ 2, 9, 918 A.2d at 1208, 1209 (concluding that a roadblock significantly advanced a burglary investigation because it was set up within two hours of the burglary, in the same area in which it was committed); *Gipson*, 268 S.W.3d at 189 (concluding that a motorist stop significantly advanced a robbery investigation when the motorists were stopped in the same parking lot where the suspects were last seen); *Baxter*, 626 S.W.2d at 937 (concluding that a motorist stop significantly advanced a robbery investigation when the motorist was the sole person in the park one-quarter mile from the robbery, where the robber likely fled); *Williamson*, 607 A.2d at 475, 478 (concluding that an investigatory motorist stop was reasonable, when the motorist was in one

---

3. The parties have not cited, and our research has not revealed, a case where investigation of a noncriminal offense has justified the seizure of a motorist in the absence of reasonable articulable suspicion.

4. The trooper testified that the Pontiac was traveling twenty-six miles per hour above the posted speed limit. "A traffic infraction is not a crime." 29–A M.R.S. § 103 (2010); *but see* 29–A M.R.S. § 2074(3) (2010) ("A person commits a Class E crime if that person oper-

ates a motor vehicle at a speed that exceeds the maximum rate of speed by 30 miles per hour or more."). Nor was the speeding violation in this case "a misdemeanor or felony, involving danger of forcible injury to persons," as the Vermont Supreme Court characterized a DUI offense. *See State v. Pierce*, 173 Vt. 151, 787 A.2d 1284, 1288 (2001) (citing American Law Institute, *Model Code of Pre-Arraignment Procedure* § 110.2(1)(b) at 5–6 (1975)).

of two cars from which gun shots were heard, and the other car sped off).

[¶ 15] Unlike a motorist who witnesses a hit-and-run accident or a robbery, the average motorist who witnesses noncriminal speeding is unlikely to take much notice of it because it is a common occurrence. In a national survey, about eighty percent of all drivers reported speeding within the past month, and about one-third reported speeding on the day of the interview. *See* National Forum on Speeding, *Strategies for Reducing Speeding–Related Fatalities & Injuries, Summary Report* 2 (2005), *available at* http://www.nhtsa.gov/people/injury/enforce/NatForumSpeeding/images/SpeedingForum.pdf. Because speeding is common, the likelihood that the average motorist will be able to assist law enforcement with a speeding investigation is not great. Therefore, although in this case LaPlante did in fact observe and remember the red Pontiac, as a general matter, stopping motorists who are potential witnesses to other motorists' civil speeding infractions will not significantly advance the investigation by law enforcement officials of speeding violations.

### 3. The Severity of the Interference with the Constitutionally–Protected Liberty Interest

[¶ 16] The Fourth Amendment protects the individual's reasonable desire for privacy, which arises from "the right to be let alone—the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). Every traffic stop involves some degree of interference with that liberty interest because the motorist, whether law-abiding or not, loses the freedom to travel without interruption. The resulting intrusion on a person's individual autonomy is not insub-

stantial. In his testimony, the trooper agreed that once he initiated his stop of LaPlante's motorcycle by activating the blue lights of his cruiser, LaPlante was "obligated to pull over," was "not free to leave," and was "seized for [all] effective purposes." *See Brewer,* 1999 ME 58, ¶ 12, 727 A.2d at 355 (discussing when an officer's interaction with a citizen constitutes a seizure). Furthermore, if law enforcement officers routinely stopped motorists to inquire about third-party speeding offenses, the aggregate damage to individual liberty would be great.

[¶ 17] In addition, none of the elements that have been found to lessen the severity of the interference with the liberty interest when a motorist is stopped in the absence of reasonable articulable suspicion are present here. The decisions upholding information-seeking roadblock stops have noted that the severity of the intrusion is minimized when the stop is brief, unlikely to cause anxiety, and planned ahead so as to minimize officer discretion in the field. For example, in *Gorneault,* the interference with a motorist's liberty interest was characterized as slight when the stop was "brief" and the officer stopped every vehicle that passed. 2007 ME 49, ¶¶ 2, 3, 9, 918 A.2d at 1208, 1209; *see also State v. Cloukey,* 486 A.2d 143, 146 (Me.1985) (listing the factors we use to evaluate the reasonableness of a roadblock stop, including the length of the stop, the degree of discretion left to the officer, and the degree of fear or anxiety likely instilled in the motorist generated by the mode of operation).

[¶ 18] Similarly, in *Lidster,* a roadblock stop "interfered only minimally" with a motorist's constitutionally-protected liberty interest because each stop lasted about ten to fifteen seconds, motorists could see the roadblock in advance because police cars with flashing lights partially blocked the highway, and the police "stopped all

vehicles systematically." 540 U.S. at 422, 427, 428, 124 S.Ct. 885; *see also Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 453, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (stating that checkpoint stops are less intrusive than roving-patrol stops because roving patrols "often operate at night on seldom-traveled roads, and their approach may frighten motorists") (quotation marks omitted); *United States v. Martinez–Fuerte*, 428 U.S. 543, 547, 567, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (upholding the constitutionality of checkpoint stops of three to five minutes).

[¶ 19] In contrast with *Gorneault* and *Lidster*, in *State v. Kent*, we recently concluded that a stop and seizure resulting from a sobriety checkpoint was constitutionally unreasonable, noting that the detention of motorists for an average of three to five minutes, in the absence of "accountability, oversight, or adherence to protocol," "suggest[ed] more than a minimal intrusion of a motorist's liberty interest." 2011 ME 42, ¶¶ 13, 14, 15, 20, 15 A.3d 1286, 1289, 1290, 1291. We noted in that case that "the crucial underlying criterion of reasonableness is the amount of discretion that a police officer is allowed to exercise in conducting a stop." *Id.* ¶ 16, 15 A.3d at 1290 (quotation marks omitted).

[¶ 20] Here, none of the elements that might have minimized the interference with LaPlante's liberty interest were present. The trooper's stop of LaPlante was not part of a pre-planned roadblock and was, in all salient respects, a function of the trooper's individual discretion. LaPlante's stop was more likely to cause alarm and anxiety than a roadblock stop because upcoming roadblocks are clearly visible, whereas LaPlante had no indication that he would be stopped. *See Sitz*, 496 U.S. at 453, 110 S.Ct. 2481. Viewed

objectively, once a motorist, such as LaPlante, submits to the authority of a law enforcement officer by pulling over and stopping, the motorist is not free to leave until given permission by the officer.[5] An individual who is pulled over under these circumstances, while operating in a manner consistent with the posted speed limit and all other laws, has no basis to know the reason for, or the likely length of, the stop that will ensue.

[¶ 21] Because there were no formal restrictions on the trooper's exercise of discretion, and, under the circumstances of the stop, there was a significant potential to cause alarm and anxiety, the interference with LaPlante's liberty interest was significant.

C. Conclusion

[¶ 22] The three *Brown v. Texas* factors lead us to conclude that the public interest in addressing a civil speeding infraction, and the degree to which that interest is furthered when a single motorist is stopped for questioning, is far outweighed by the substantial interference with the stopped motorist's constitutionally-protected liberty interest. The investigation of a civil speeding offense does not justify the discretionary seizure of a motorist in the absence of reasonable articulable suspicion. Accordingly, the evidence derived from the trooper's stop of LaPlante should have been suppressed.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

5. Although not in effect at the time of LaPlante's stop, 17–A M.R.S. § 751–B(1)(A) (2010) would now render it a Class E offense for a person in LaPlante's circumstances to drive away from the officer without permission.