Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/08/2016 09:05 AM CDT

State of Nebraska, appellee, v.
Adam T. Woldt, appellant.
___ N.W.2d ___

Filed April 8, 2016.    No. S-14-573.

1. **Constitutional Law: Search and Seizure: Motions to Suppress:
   Appeal and Error.** In reviewing a trial court's ruling on a motion to
   suppress based on a claimed violation of the Fourth Amendment, an
   appellate court applies a two-part standard of review. Regarding histori-
   cal facts, an appellate court reviews the trial court's findings for clear
   error, but whether those facts trigger or violate Fourth Amendment pro-
   tection is a question of law that an appellate court reviews independently
   of the trial court's determination.
2. **Trial: Investigative Stops: Warrantless Searches: Appeal and Error.**
   The ultimate determinations of reasonable suspicion to conduct an
   investigatory stop and probable cause to perform a warrantless search
   are reviewed de novo, and findings of fact are reviewed for clear error,
   giving due weight to the inferences drawn from those facts by the
   trial judge.
3. **Constitutional Law: Search and Seizure: Arrests: Police Officers
   and Sheriffs.** Whether a seizure that is less intrusive than a traditional
   arrest is otherwise reasonable depends on a balance between the public
   interest and the individual's right to personal security free from arbitrary
   interference by law officers. Consideration of the constitutionality of
   such seizure involves a weighing of the gravity of the public concerns
   served by the seizure, the degree to which the seizure advances the pub-
   lic interest, and the severity of the interference with individual liberty.
4. **Constitutional Law: Search and Seizure.** A seizure in the Fourth
   Amendment context occurs only if, in view of all the circumstances sur-
   rounding the incident, a reasonable person would have believed that he
   or she was not free to leave.

Petition for further review from the Court of Appeals,
Moore, Chief Judge, and Irwin and Riedmann, Judges, on

appeal thereto from the District Court for Cuming County, JAMES G. KUBE, Judge, on appeal thereto from the County Court for Cuming County, MICHAEL L. LONG, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Thomas B. Donner for appellant.

Douglas J. Peterson and Jon Bruning, Attorneys General, and Austin N. Relph for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

Adam T. Woldt was convicted in the county court for Cuming County of driving under the influence and was sentenced to 6 months' probation. His conviction and sentence were affirmed by the district court. On appeal, the Nebraska Court of Appeals found that police did not act reasonably in stopping Woldt. Accordingly, the Court of Appeals reversed Woldt's conviction and remanded the cause with directions.[1] Upon further review, we reverse the decision of the Court of Appeals.

## II. FACTUAL BACKGROUND

The facts leading up to Woldt's stop are as follows: Officer Randy Davie of the Wisner, Nebraska, police department received a report from dispatch of multiple traffic cones having been knocked down on Highway 275, the main street in Wisner. Dispatch indicated that the party responsible was driving a white Chevrolet pickup.

Davie stopped to pick up the cones. While doing so, he heard squealing tires nearby. Davie finished picking up the cones, returned to his cruiser, and began looking for the

---

[1] See *State v. Woldt*, 23 Neb. App. 42, 867 N.W.2d 637 (2015).

pickup. He found the pickup nearby and, recognizing the driver as Jacob Biggerstaff, made eye contact and motioned with his arm for Biggerstaff to pull over. Biggerstaff pulled up about four or five car lengths farther and parked along the opposite curb from Davie's location. Following Biggerstaff by one car length or less was another pickup, driven by Woldt. When Biggerstaff pulled his pickup over, Woldt also pulled his pickup over.

Davie approached Biggerstaff's vehicle, smelled the odor of alcohol, and saw signs that Biggerstaff might have been impaired. Davie brought Biggerstaff back to his patrol car.

At that time, the pickup driven by Woldt reversed into the intersection as if to drive away. Davie testified that he recognized Woldt "[b]y sight" as an employee of the city of Wisner. Davie motioned for Woldt to stop and to come over to Davie. Davie testified that he did not recall whether he verbally requested that Woldt stop, but both Woldt and Biggerstaff testified that he did so. Davie testified that he wanted to talk to Woldt because he thought that Woldt might have information about Biggerstaff's activities.

Davie approached Woldt's vehicle and smelled the odor of alcohol. Davie asked Woldt if he had been drinking, and Woldt put his head down. Davie asked Woldt if he was drunk, and Woldt turned off his vehicle and handed Davie his keys. Woldt was arrested for driving under the influence. Woldt stipulated that chemical test results of his breath registered an alcohol content of .148.

## III. PROCEDURAL BACKGROUND

On September 26, 2013, Woldt was charged in the county court for Cuming County with misdemeanor driving under the influence. He pled not guilty. Woldt then filed a motion to suppress his stop, detention, arrest, and any statements he had made. The motion to suppress was denied on December 3. Woldt was found guilty following a trial on stipulated facts and was sentenced to 6 months' probation.

Woldt appealed to the district court, sitting as an intermediate court of appeal. The district court affirmed.

Woldt then appealed to the Court of Appeals, which reversed his conviction and remanded the cause with directions. The Court of Appeals concluded that law enforcement's stop was not reasonable under *Brown v. Texas*[2] and *Illinois v. Lidster*.[3] Specifically, the Court of Appeals focused on the balancing test set forth in *Brown*, which requires a "weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty."[4]

The Court of Appeals agreed that it was "reasonable for Davie to believe that Woldt was a potential witness to any crimes by Biggerstaff and might have information for Davie that would advance his investigation of those crimes," but also stated that because Davie recognized Woldt as a city employee, he could have contacted Woldt at a later date if necessary.[5] The Court of Appeals further noted that "the degree of intrusion on Woldt's liberty interest was not great."[6] But the Court of Appeals found that the "matters under investigation under the circumstances of this case were not of grave public concern"[7] and concluded that the intrusion still was not "outweighed by the degree of public concern and the extent to which questioning Woldt at that time advanced any investigation of Biggerstaff."[8]

We granted the State's petition for further review.

---

[2] *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979).

[3] *Illinois v. Lidster*, 540 U.S. 419, 124 S. Ct. 885, 157 L. Ed. 2d 843 (2004).

[4] *Brown v. Texas, supra* note 2, 443 U.S. at 51.

[5] *State v. Woldt, supra* note 1, 23 Neb. App. at 60, 867 N.W.2d at 650.

[6] *Id.* at 61, 867 N.W.2d at 650.

[7] *Id.* at 60, 867 N.W.2d at 649.

[8] *Id*. at 61, 867 N.W.2d at 650.

## IV. ASSIGNMENTS OF ERROR

On further review, the State assigns that the Court of Appeals erred in (1) concluding that the stop of Woldt was not reasonable, and thus unconstitutional, under *Brown* and (2) refusing to address the State's alternative argument that the stop of Woldt was reasonable based upon Davie's observation of conduct by Woldt that amounted to traffic violations.

## V. STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[9] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[10] The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.[11]

## VI. ANALYSIS

[3] The issue presented by this case is whether Davie's stop of Woldt was reasonable. The U.S. Supreme Court addressed the "reasonableness of seizures that are less intrusive than a traditional arrest" in *Brown v. Texas*.[12] The Court held that such reasonableness

---

[9] *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014).

[10] *Id.*

[11] *State v. Dalland*, 287 Neb. 231, 842 N.W.2d 92 (2014).

[12] *Brown v. Texas, supra* note 2, 443 U.S. at 50.

depends "'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" [Citations omitted.] Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.[13]

The Court applied *Brown* in *Illinois v. Lidster*.[14] In *Lidster*, law enforcement conducted a checkpoint in order to gather information about a hit-and-run accident that had occurred a week earlier at a location near the checkpoint. During the course of the operation of the checkpoint, the defendant was stopped and determined to be driving under the influence.

The Court declined to apply *Indianapolis v. Edmond*[15] to the checkpoint at issue in *Lidster*. In *Edmond*, the Court found that the intent of the checkpoint was to detect criminal activity and that such violated the Fourth Amendment. The Court distinguished *Lidster* from *Edmond*, because the purpose of the checkpoint was for information gathering purposes, and noted that such did "not mean the stop is automatically, or even presumptively, constitutional. It simply means that we must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances."[16] The Court then applied the *Brown* balancing test and held that the checkpoint advanced a grave public concern, was narrowly tailored to fit law enforcement's investigatory needs, and interfered only minimally with a driver's liberty.

---

[13] *Id.*, 443 U.S. at 50-51.

[14] *Illinois v. Lidster, supra* note 3.

[15] *Indianapolis v. Edmond*, 531 U.S. 32, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000).

[16] *Lidster, supra* note 3, 540 U.S. at 426.

### 1. WAS THERE SEIZURE FOR FOURTH AMENDMENT PURPOSES?

[4] The State concedes that Woldt was seized for urposes of the Fourth Amendment. A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[17] We agree that on these facts, Davie seized Woldt for purposes of the Fourth Amendment when Davie motioned to Woldt and possibly verbally requested Woldt to not leave the scene.

### 2. DOES *LIDSTER* APPLY TO NON-CHECKPOINT CASES?

Having concluded that the Fourth Amendment is implicated here, we turn to Woldt's contention that *Lidster* and *Brown* are inapplicable because this case is not a checkpoint case.

We have found multiple cases where a court discussed or applied *Lidster* to a non-checkpoint stop.[18] And in any case, by its terms, *Brown* envisions that its balancing test should be applied when assessing "the reasonableness of seizures that are less intrusive than a traditional arrest."[19] The situation presented by these facts is such a seizure, and the application of the *Brown* balancing test is appropriate here.

---

[17] *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016).

[18] See, e.g., *Maxwell v. County of San Diego*, 708 F.3d 1075 (9th Cir. 2013); *Manzanares v. Higdon*, 575 F.3d 1135 (10th Cir. 2009); *State v. Whitney*, 54 A.3d 1284 (Me. 2012); *State v. LaPlante*, 26 A.3d 337 (Me. 2011); *Gipson v. State*, 268 S.W.3d 185 (Tex. App. 2008); *State v. Mitchell*, 145 Wash. App. 1, 186 P.3d 1071 (2008); *State v. Watkins*, 207 Ariz. 562, 88 P.3d 1174 (Ariz. App. 2004); *State v. Wilson*, No. 22001, 2007 WL 4305715 (Ohio App. Dec. 7, 2007) (unpublished decision). See, also, *State v. Pierce*, 173 Vt. 151, 787 A.2d 1284 (2001) (applying factors used in *Brown* in pre-*Lidster* case); *In re Muhammed F.*, 94 N.Y.2d 136, 722 N.E.2d 45, 700 N.Y.S.2d 77 (1999) (applying *Brown* factors in pre-*Lidster* case).

[19] *Brown v. Texas, supra* note 2, 443 U.S. at 50.

### 3. Was Stop Reasonable
### Under *Brown*?

Under *Brown*, a court should consider the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty, in order to determine whether a stop was reasonable.

In this case, the district court concluded that the stop was reasonable. The Court of Appeals disagreed. The Court of Appeals agreed that "the degree of intrusion on Woldt's liberty interest was not great," but further concluded that the "matters under investigation under the circumstances of this case were not of grave public concern" and that "the evidence does not show that stopping and questioning Woldt at that time would have advanced the investigation to a greater degree than contacting him the following day at his workplace would have."[20] As such, the Court of Appeals found the stop unreasonable.

#### (a) Gravity of Public Concern

We turn first to the public concern at issue. The Court of Appeals concludes that the public concern here was the knocking down of the traffic cones as creating a potential hazard. The State disagrees and concludes that the public concern was not just the hazard the cones presented, but the hazard the driver who knocked down the cones presented. The State argues that the public concern presented here was Biggerstaff's driving under the influence.

In support of his argument on appeal that the public concern was not grave, Woldt directs us to *State v. LaPlante*[21] and *State v. Whitney*.[22] In *LaPlante*, the Maine Supreme Judicial

---

[20] *State v. Woldt, supra* note 1, 23 Neb. App. at 60, 61, 867 N.W.2d at 649, 650.

[21] *State v. LaPlante, supra* note 18.

[22] *State v. Whitney, supra* note 18.

Court concluded that a civil speeding infraction was not a sufficient grave public concern. And in *Whitney*, the court noted that leaving the scene of an accident, as a misdemeanor, was more serious than speeding, but was still not a sufficiently grave public concern. These cases are distinguishable.

Contrary to the conclusion of the Court of Appeals, the investigation of the downed cones was not the public concern presented by these facts. While Davie might have originally stopped Biggerstaff to investigate the cones, his investigation went from concern for that minor violation to a much more serious concern when Davie smelled alcohol on Biggerstaff and suspected him of driving under the influence. Driving under the influence can rise to the level of a Class II felony[23] and presents a threat to everyone sharing the road with a drunk driver. As such, we conclude that the circumstances here presented a grave public concern.

### (b) Degree to Which Seizure
### Advances Public Interest

As to the second factor of the *Brown* balancing test, the Court of Appeals concluded that it was "reasonable for Davie to believe that Woldt was a potential witness to any crimes by Biggerstaff and might have information for Davie that would advance his investigation of those crimes"[24] But the Court of Appeals nevertheless concluded that the seizure did not sufficiently advance the public interest, because Davie recognized Woldt as a city employee and could have gone to talk to him about the incident at a later date.

We agree that Davie could have sought out Woldt at a later time, but such does not make unreasonable the officer's decision to instead talk to Woldt at the scene. As the Court of Appeals noted, questioning Woldt might have advanced the investigation against Biggerstaff. Because Woldt was following

---

[23] See Neb. Rev. Stat. § 60-6,197.03(10) (Supp. 2015).

[24] *State v. Woldt, supra* note 1, 23 Neb. App. at 60, 867 N.W.2d at 650.

closely behind Biggerstaff's pickup and waited throughout the stop of Biggerstaff, it was reasonable for Davie to conclude that Woldt might have information to share.

Moreover, at that point in time, Woldt's memory was fresh, and any statement he might give at the scene would arguably be more reliable. Speaking to Woldt immediately would also limit any ability of Woldt and Biggerstaff to collude with each other regarding any statements they might give Davie. Other considerations, including making sure Davie was correct in his identification of Woldt, obtaining Woldt's contact information, and possibly setting up a later time to make a statement, suggest that Davie's decision to stop Woldt briefly at the scene was not unreasonable.

These facts are similar to the facts presented in *State v. Pierce*.[25] There, the Vermont Supreme Court applied the factors used in *Brown* to the stop of a driver whom the officer believed was a witness to another driver's erratic driving. The court noted that drunk driving was a "'serious threat to public safety'" and found that the witness had the "perfect vantage point" to "observe the erratic operation" of the other vehicle.[26] Finally, the court noted that a brief stop to ensure that the witness could be properly identified and could provide a "fresh witness account" was reasonable.[27]

Meanwhile, *LaPlante*, which Woldt relies on, is factually distinguishable. There, stopping another motorist would not have necessarily advanced the speeding investigation. But here, Davie had specific information that the cones had been knocked down by someone driving a white pickup. He then heard squealing tires and, following the sound, found a white pickup driven by Biggerstaff. When Davie motioned Biggerstaff to pull his pickup over, Woldt, who was

---

[25] *State v. Pierce, supra* note 18.

[26] *Id*. at 156, 787 A.2d at 1289 (citing prior case law regarding risks of driving under influence).

[27] *Id*.

following the pickup closely, also pulled his pickup over. Woldt then waited as Davie approached Biggerstaff's pickup and led Biggerstaff back to Davie's patrol car. Thus, Woldt's involvement is far less attenuated than the random driver in *LaPlante* who might have had information about a speeding motorist.

### (c) Severity of Interference
### With Individual Liberty

As to the last factor, the Court of Appeals acknowledged that in this case, the interference with Woldt's liberty interest with respect to the informational stop was "not great."[28] The record supports this conclusion—Woldt was parked behind Biggerstaff as the stop of Biggerstaff occurred. This was not a question of Davie sounding his patrol car's siren and activating its lights to pull over Woldt while Woldt was operating his vehicle. Rather, this was Davie waving, and possibly verbally requesting, that Woldt stay where he was so that Davie could ask him questions relating to Biggerstaff's activities.

Woldt cites to *State v. Wilson*,[29] an unpublished opinion of the Ohio Court of Appeals, in support of his position that the interference with his liberty interest was great. But *Wilson* is distinguishable. The officers in *Wilson* approached the defendant's vehicle with guns drawn, purportedly to obtain information from the defendant about another individual's possession of a firearm while being a felon. Nothing approaching this situation occurred in this case.

### (d) Balancing *Brown* Factors

In balancing the *Brown* factors, the Court of Appeals found that the stop was not reasonable. But when considering, de novo, the *Brown* balancing test in light of the above, we disagree. The public concern was not just the traffic cone

---

[28] *State v. Woldt, supra* note 1, 23 Neb. App. at 61, 867 N.W.2d at 650.

[29] *State v. Wilson, supra* note 18.

hazard; rather, the concern was driving under the influence, for which Biggerstaff was under investigation. This weighs heavily in favor of the reasonableness of the stop.

And stopping Woldt to see if he had any information about Biggerstaff's possible crimes would advance Davie's investigation. This is particularly so on these facts, where Woldt also stopped when Davie pulled Biggerstaff over. It was reasonable for Davie to conclude that because Woldt stopped, he had information to provide to Davie. Again, this weighs in favor of reasonableness.

Finally, the interference was slight, because Woldt was already stopped, weighing in favor of reasonableness.

We note that in *State v. Ryland*,[30] this court held that a stop to obtain a statement from the defendant about an accident the defendant had witnessed 1 week earlier was not reasonable because the officer lacked reasonable suspicion or probable cause to stop the defendant. *Ryland* is distinguishable, both factually and because it was decided prior to the authorization in *Lidster* of information gathering stops. To the extent that *Ryland* holds that an information gathering stop requires reasonable suspicion or probable cause, it is disapproved.

When all the factors are weighed, we conclude that the stop was reasonable under *Brown v. Texas*.[31] We therefore hold that the Court of Appeals erred in its balancing of the *Brown* factors. Because we conclude that the stop was reasonable under *Brown*, we need not address the State's alternative grounds that the stop was otherwise reasonable.

## VII. CONCLUSION

The judgment of the Court of Appeals is reversed, and the cause is remanded to that court with directions to affirm the judgment of the district court.

Reversed and remanded with directions.

---

[30] *State v. Ryland*, 241 Neb. 74, 486 N.W.2d 210 (1992).

[31] *Brown v. Texas, supra* note 2.